# Patterson *against* Nichol.

The statute of limitations is not a bar to the recovery of a distributive share of personal estate, to which the plaintiff is entitled under the intestate laws.

In an action to recover the distributive share of an intestate, the plaintiff is entitled to recover interest, although no refunding bond was tendered until long after the death of the intestate.

ERROR to the common pleas of *Allegheny* county.

This was an action on the case by Thomas Nichol and Sarah, his wife, against John Patterson and William Patterson, administrators of Robert Patterson, to recover the distributive share of the plaintiff in the estate of her father.

The testimony given in the cause was voluminous, but the only questions of any importance which it gave rise to, were, first, whether the act of limitations was an available defence in an action to recover a distributive share of an intestate's estate? Secondly, whether a plaintiff in such action was entitled to recover interest from the administrators upon the share to which he was entitled?

The court below (Dallas, president) ruled both points in favour of the plaintiffs, and the defendants excepted to this opinion.

*M'Candless*, for plaintiff in error, on the first point, cited 7 *Johns. Ch.* 90; 10 *Vez.* 93; 2 *Rawle* 302; 1 *Watts* 275; 4 *Watts* 151. On the second point, 17 *Serg. & Rawle* 390; *Ashm. Rep.* 340; 2 *Penns. Rep.* 100; 2 *Watts* 209.

*Livingston* and *Metcalf*, contra, on the first point, cited 3 *Johns. Ch.* 190; 14 *Serg. & Rawle* 394; 2 *Watts.* 161; 4 *Watts* 15. On the second point, 4 *Serg. & Rawle* 116; 1 *Johns. Ch.* 508.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned, presents the question whether the statute of limitations is a bar to the recovery of a distributive share of the personal estate of an intestate, where six years from the time when the distributee might first have demanded the same from the administrators of the intestate, have run before the institution of the action. The decision of this court, and the

principles laid down in Thompson *v.* M'Gaw, 4 *Watts* 161, and recognized again in Doebler *v.* Snavely, 5 *Watts* 225, settle this question.   There it was held that the statute of limitations does not embrace the case of a legacy.   All the reasons there advanced, or which can be given, in order to show that the statute is not applicable to a legacy are equally strong, at least to show that it cannot be extended to the distributive share of an intestate's personal estate.   Originally, in England, the courts of common law took no cognizance of the personal estates of intestates, remaining in the hands of administrators, after payment of the debts of the deceased, more than they did of those of testators, which were disposed of by wills or testaments.   Both were left under the direction of the ecclesiastical courts; since that, however, chancery has entertained jurisdiction of both, upon the ground of the executors being trustees for the legatees; and the administrators for the next of kin, who are entitled to the surplus of the intestate's estate, remaining after payment of the debts and funeral expenses, to be distributed and paid according to the statute of distribution.   And it would seem, if there be any distinction which can be drawn between a legacy and a distributive share under the intestate law, it would rather go to exclude more clearly the case of a distributive share from the operation of the statute of limitations, than that of a legacy; because, in the case of a legacy, there being no remedy provided or declared for the recovery thereof by statute, until the act of the 21st of March 1772, and having no court of chancery in this state, the common law courts must of necessity, have taken cognizance of legacies, and entertained actions for the recovery of them, in order to prevent an entire failure of justice and an illegal withholding of another's right, without his having the means of redress within his reach.   This act, therefore, may be considered rather of a declaratory character, and as having been passed with a view to regulate the practice of suing for legacies in such a way as to secure the interests of the creditors of the testator, by making it the duty of the legatees to enter into refunding bonds with two sureties at least, before they should be entitled to demand and recover their legacies.   But the orphans' courts would seem to have had an early jurisdiction given to them by our statutory intestate laws, which authorized them to settle and decree a distribution of the personal estate of deceased intestates, among the next of kin according to the provisions thereof.

Anterior to the passage of the act of limitations, which was on the 27th of March 1713, the orphans' courts of the state were invested with full power to call administrators to account for the personal estates of their intestates, and upon investigation and due consideration thereof, to decree a just and equal distribution of what remained in their hands, after payment of the debts and funeral expenses, to and among the next of kin in the manner prescribed by the existing intestate laws.   Now it is perfectly mani-

[Patterson v. Nichol.]

fest that the limitation act contains no terms, that can be made to embrace claims, over which the orphans' courts had jurisdiction given to them, and that might have been recovered by application to them.   Besides, the payment of the distributive shares coming to the next of kin of the intestates, were also secured by the bonds, which were required to be given by the administrators upon their taking out letters of administration.   And it is equally clear, that all claims secured by bonds or specialties are not included within the statute of limitations.   Again, it has been held, that the statute does not apply or extend to cases of *express trusts,* Walker *v.* Walker, 16 *Serg. & Rawle* 379, which from their very nature cannot be subject to limitation, as long as the trust is undischarged; and while the relation of trustee and *cestui que trust* continues to exist, their respective rights and positions are not adverse to, but perfectly consistent with each other; so that the policy, which dictated and gave birth to the statute of limitations, would not seem to require the application of such a principle, in order to put an end to the claim of the *cestui que trust.*

Neither can it make any difference, whether the trust be created by the act or agreement of the parties, or by the act of the law, provided the trustee has *expressly consented* to take upon himself the character of a trustee, as in the case of administrators, for all come alike within the principle of the exception.   In cases, however, of *constructive trusts,* resulting from partnerships, agencies and the like, the statute has been held to apply.   Robinson *v.* Hook, 4 *Mason* 139, 150, 151, 152, 153, and the authorities cited in the margin.   Farnam *v.* Brooks, 9 *Pick.* 243.   And it may be, that the statute of limitations would protect a trustee in any case, against claims growing out of the trust, and not secured by deed or covenant under seal, where six years have run after the relationship of trustee and *cestui que trust* has been dissolved, and the latter has acquired a right to sue the former at law.   But it is clear, that as long as the *cestui que trust* has no right to commence a suit, without first doing some act on his part, the statute cannot run against his claim: in this respect, he must be considered as standing on the same footing with that of any other person.   For instance, if a sum of money be made payable to the plaintiff within a limited time after request, he cannot be said to have a right to sue, until he has made a demand, and the time appointed for the payment of the money thereafter has elapsed.   And no rule of law seems to be better settled, than that the statute does not begin, until the plaintiff's right of action has accrued, or he has acquired a right to sue.   Little *v.* Blunt, 9 *Pick.* 490–1.

And upon this ground it was ruled by this court, in Foster *v.* Jack, 4 *Watts* 334, that the statute of limitations did not commence running against the claim of an attorney at law for professional services, until after demand of payment made of his client, or the relation of attorney and client had been dissolved.   Now in the

present case the plaintiffs could maintain no action without making a previous request or demand of their claim from the administrators, and tendering to them a refunding bond, with sufficient surety. Had this been done, and the plaintiffs afterwards had neglected to commence this action for six years, the statute possibly might have been a bar to it. But without a previous demand and tender of the bond, it would be unreasonable, and, indeed, unjust in the extreme, to permit the plaintiff to maintain such action as the present; because, if he recover at all from the administrator in such case, he is entitled to recover his costs from the administrator, which the latter must pay out of his own pocket. This was ruled in the case of Wilson *v.* Wilson, 3 *Binn.* 557. By the intestate law, however, of 1794, the administrator is not bound, nor can he be compelled to pay until such bond shall be given; to say, then, that he may be sued for not paying before he is bound to do so, would certainly be somewhat anomalous; for until it be tendered to him, and he neglects or refuses to pay, it can with no propriety be said that he is in default. It would, therefore, seem to be contrary to every principle of analogy to hold that he may be sued, without such bond being previously tendered, and rendered liable to pay the costs of the action, as well as the plaintiff's share of the estate, upon the latter's tendering or giving the bond at any subsequent period or stage of the action. The act of assembly, in the case of a legacy, expressly requires that a demand shall be made and the bond tendered before the commencement of the action; and had the legislature, when they required the like bond to be given by the next of kin in the case of an intestacy, intended it as preparatory to the commencement of an *action upon the case, debt, detinue* or *account render*, as they had previously provided in the case of a legacy, they doubtless would have directed, in equally explicit terms, that a demand should be made first, and the refunding bond tendered to the administrator. But the refunding bonds, directed to be given in cases of intestacy, are only required to be given in the orphans' courts when distribution is made or decreed by them, which is done without commencing *any action;* or to be given to the administrators, where the parties shall agree to make distribution amicably without application to the orphans' court. It is very obvious, from the intestate law of 1794, that the legislature, in giving the orphans' court power to decree distribution, considered that they were thereby giving to the next of kin an ample and adequate remedy in every case of the kind that could arise; and that there would be no occasion to resort to an action like the present in a court governed by the rules of the common law in its course of proceeding; otherwise it is probable that they might have provided specially for it, as in the case of legacies; for the avowed object of requiring a refunding bond to be given in both cases was, that creditors of the estate of either might be made secure in receiving payment of their claims, which was not to be dispensed with in any case. See the 15th and

[Patterson v. Nichol.]

16th sections of the act of the 19th of April 1794, and the 4th section of the act of the 21st of March 1772. If, however, those entitled to receive the distributive shares of an intestate's estate do not choose to abide by the remedy provided by the intestate act of 1794, and in pursuance thereof apply to the orphans' court of the proper county in order to obtain payment, but will resort to an action like the present, such as is provided in case of a legacy, there is no reason why they should not be bound to make a demand and give bonds previously to commencing their actions, as the object and reason for doing so is the same in their case as in the case of legatees.

There is nothing in the second error which requires notice: that it cannot be sustained is too plain to admit of argument. Neither do we perceive any error in the third matter excepted to. It was right to allow the interest, seeing the defendant did not even attempt to show that he or his colleague, for whom he had made himself accountable by joining with him in settling their administration account, had not used the money sued for: but the very circumstance of their not paying or offering to pay the money, upon its being demanded in due form, was evidence to prove that they had actually used it, or otherwise they would have offered to pay the principal at least. In justice, therefore, they are bound to pay the interest as well as the principal.

As to the fourth and last error, there does not appear to have been any evidence given to the jury on the trial, showing that John Patterson, the other administrator, was the guardian of the plaintiff's wife at any time, and that as such he had any charge of either her person or estate: nor was any evidence given going to prove that he had maintained or supported her out of his own estate, or that he had expended the money in question for that purpose: no account of the kind was produced. All the instruction, therefore, asked of the court to the jury, by the counsel for the defendant below, in relation thereto, was without the necessary ground to warrant or render it proper.

Judgment affirmed.