## . MIDDLE DISTRICT, HARRISBURG, 1857.

2g　353
f223　¹309

# Burd's Executors *versus* M'Gregor's Administrator.

1. A party to a suit, has no right to demand instructions to a jury, upon a point of law not raised by the pleadings, and, if asked for and given against him, he has no right to complain that they were erroneous in principle.

2. A decree of the Orphans' Court, settling the amount due from an administrator or executor, is conclusive of the sum due.

3. The personal, as well as the real estate of executors and administrators, is bound for the payment of a balance, decreed to be in their hands by the Orphans' Court.

4. An action by *scire facias*, on a decree of the Orphans' Court, fixing the amount in the hands of an executor or administrator, is in the nature of an action of debt on a judicial decree, and not within the meaning of the Statute of Limitations.

5. The Act of Assembly, which bars distributees who neglect to lay legal claim to their "respective shares," within seven years after the decease of the intestate, operates on distributees only, and not upon creditors.

6. A judgment, in a common law action, against an administrator or executor, is only a judgment against the estate of the decedent, and does not bind the executor or the administrator personally.

7. The Orphans' Court has exclusive jurisdiction, of a plea by an administrator, that he had fully administered.

8. The plea of *nil debet* cannot be received, to invalidate the decree of the Orphans' Court.

9. A discharged administrator is a competent witness to support the claims of an estate, in an action brought for their recovery by his successor.

ERROR to the Court of Common Pleas of *Cumberland county*.

This was a *scire facias* upon a transcript, certified from the Orphans' Court of said county. This is the third time the case has been in the Supreme Court in some form. The first time as *Hubley's Appeal*, 7 Harris, 138; the second time as *Wm. M. Penrose's Appeal*.

In 1814, John M'Gregor died intestate and unmarried, leaving as his heirs at law, Agnes Potter, Alexander M'Gregor, and Rose M'Gregor. Letters of administration were issued by the register of Cumberland county, on John M'Gregor's estate, to William Bard and Joseph Burd, on the 14th December, 1814, and they settled their final account of administration of M'Gregor's estate, which was confirmed by the Orphans' Court, 26th

May, 1821, finding a balance of $6986.37 in their hands, which was then ordered by the court to be distributed according to law. On the 18th July, 1832, letters of administration were issued by the register of Cumberland county on the estate of Alexander M'Gregor, to Charles B. Penrose, Esq. On the 18th October, 1832, Robert Potter and wife filed a transcript of the balance, $6986.37, due by Wm. Bard and Joseph Burd on their administration account, in the Common Pleas of Cumberland county, and on the 25th October, 1832, issued a *sci. fa.* to recover their portion of it, which was defended by Mr. Penrose, for the administrators. This suit was tried, and on the 21st November, 1833, a judgment was entered for the defendants, which was removed by writ of error to the Supreme Court, on 15th May, 1834, and on 29th June, 1835, the judgment of the Common Pleas was reversed, and a *venire de novo* awarded.

On the 30th March, 1833, previous to the above trial in the Common Pleas, C. B. Penrose, as administrator of Rose Conner and Alexander M'Gregor, released a tract of land owned by Joseph Burd, from the lien of the transcript of balance due by Burd and Bard on their administration account of John M'Gregor's estate, filed by the Potters on the 18th October, 1832, so that Burd might complete his contract for the sale of it to Daniel Eckert.

Joseph Burd died on the 15th March, 1834, and letters testamentary on his will, issued 1st April, 1834, to Francis S. Hubley and George Patterson, the plaintiffs in error and defendants below, who, after the reversal of the judgment in the Common Pleas, by the Supreme Court, in favor of the Potters, paid their claim and costs, 16th November, 1835, and 1st May, 1836, as shown by the receipts in evidence. The record from the Supreme Court was not returned to the Common Pleas of Cumberland county, until 18th August, 1848.

William Bard, the other administrator of John M'Gregor, died about two years after Joseph Burd.

On the 28th July, 1841, Patterson and Hubley, executors of Joseph Burd, filed a full and final administration account of his estate, which was confirmed by the Orphans' Court, on the 1st September, 1841, showing a debit of $17,734.98½, and credits $16,848.79, leaving in their hands a balance of $886.19. This balance was more than paid out, by the plaintiffs in error, to the legatees named in Burd's will, and in expenses incurred in litigating the claims of the defendants in error, against Burd's estate, amounting to the sum of $1120.75, between the 1st September, 1841, and 24th July, 1852, and before this *scire facias* was issued.

On the petition of Charles B. Penrose, Esq., administrator of Rose and Alexander M'Gregor, citations were awarded to

the executors of Joseph Burd, deceased, to settle a final and supplemental account of their testator, on the estate of John M'Gregor, none of which were served until 1848, when the executors appeared, answered, &c., and the proceedings ultimately determined by this Court, that the account of 1821 was a final one, and that neither they nor their testator, had received assets of M'Gregor's estate since the filing of the account of 1821, that required them to settle a supplemental one.　The evidence now given, in reference to these proceedings, was the same as that in *Hubley's Appeal*, 7 Harris, 138, and *Wm. M. Penrose, administrator, &c. of Rose and Alexander M'Gregor, Appeal.*

On the 18th July, 1832, when C. B. Penrose, Esq., took out letters of administration, on the estates of Alexander and Rose M'Gregor, he gave the usual bonds to the Commonwealth, in each case, in the penal sum of $5000, which were given in evidence to the court, and subsequently to the jury.

On the 16th July, 1852, Charles B. Penrose Esq., settled his administration accounts of Rose and Alexander M'Gregor; and a balance found in his hands, in each case, of $842.86.

On the 17th August, 1852, Charles B. Penrose, Esq., petitioned the Orphans' Court to be discharged from his trust as administrator, &c., of Rose and Alexander M'Gregor, notice of which was accepted by Wm. M. Penrose, administrator, &c., of the same persons, and a release in each case, for the sum found to be due by C. B. Penrose, Esq., given by Wm. M. Penrose, Esq., administrator as aforesaid; the court discharged C. B. Penrose from his trust.

Joseph Burd had no other real estate, bound by the lien of the transcript, filed 18th October, 1832, than that released from its lien by Charles B. Penrose, Esq., on the 30th March, 1833.

On the 2d September, 1852, Wm. M. Penrose, administrator, &c., of Rose M'Gregor, issued the present *sci. fa.*, to recover her share of the balance, for which the transcript was filed 18th October, 1832, and that *sci. fa.*, with one similar, as administrator of Alexander M'Gregor—both being by consent tried together in the Common Pleas—are the suits now before the court.

On the trial of the cause, Charles B. Penrose, Esq., the former administrator of Rose and Alexander M'Gregor, was offered as a witness by the plaintiff below, to prove the non-payment to him of the distributive shares, sought to be recovered in this suit, who was objected to by the defendants below, on the ground of being interested.　In support of which objection, the letters of administration to him, as administrator, &c., of Rose and Alexander M'Gregor, with his administration bonds, in the penal sum of $5000 each, his petition for the citations to Joseph Burd's executors, and proceedings upon them, were given in evi-

dence to the court; to remove which objection, the plaintiffs below gave in evidence to the court, the administration accounts of C. B. Penrose, as administrator of Rose and Alexander M'Gregor, the petitions of Mr. Penrose for his discharge from his trust, his discharge, and the releases from Wm. M. Penrose, administrator, &c., the plaintiff below, for balances found in his hands. The defendants still insisted upon their objection to Mr. Penrose as a witness, on the ground of interest. The court overruled the objection, and admitted the witness to testify, to which the defendants below excepted, and the court sealed a bill. This is the first error assigned.

The only other witness in the cause, was David Kenower, and he testified that Joseph Burd, on the day of his death, told him, he and Bard were the executors of a certain M'Gregor's estate; that Bard was the acting executor, and received the money, and failed in paying, and he had become accountable for the money coming to the heirs; he said he had paid some, and was called upon to pay more, and wanted $1000; I was to pay him $1000 next day.

The other testimony in the cause, shows conclusively, that $1000 and upwards, was paid by Burd's executors to Mr. Watts, the attorney for Robert and Agnes Potter, in 1836.

The defence is concisely stated in the following points of the defendant below:

"1. That upon the *scire facias* given in evidence in these cases, there can be no recovery; they are defective and insufficient, and contain no such cause of action as will justify a recovery upon the transcript of the balance, on the administration account of Joseph Burd, deceased, and William Bard, filed on the 18th October, 1832, and entered to No. 300, August Term, 1832, in the Common Pleas of Cumberland county, on which they issued.

"2. That under the 29th section of the Act of 29th March, 1832, under which this transcript was filed, its lien was limited to five years, and that lien having expired on the 19th of October, 1837, no recovery can be had on these *scire facias*, which did not issue until the 2d day of September, A. D. 1852.

"3. That by the 18th section of the Act of 19th April, 1794, re-enacted by the 19th section of the Act of 8th April, 1833, the plaintiffs were bound to lay legal claim to their respective distributive shares of the estate of John M'Gregor, deceased, within seven years after his decease, and having failed to make such claim until the issuing of these *scire facias* in 1852, they are barred from a recovery in these actions.

"4. That on the death of Joseph Burd, in March, 1834, the trust as between him and the distributees of the estate of John M'Gregor, deceased, cease. No part of the funds of the estate of

[Burd's Executors *v.* M'Gregor's Administrator.]

John M'Gregor remained at the death of Joseph Burd, separate and distinguishable from his own property, but the whole of such funds, without distinction, were mingled with, and absorbed in the general mass of Joseph Burd's estate, and in that condition came to the hands of the defendants, his executors, on the first day of April, A. D. 1834, when letters testamentary on Joseph Burd's estate, issued to them, and the plaintiff's claims, if any he have, for their respective distributive shares of M'Gregor's estate, is, as a common creditor against Joseph Burd's estate, and are barred by the lapse of six years from the first day of April, A. D. 1834, when letters testamentary issued to defendants on Joseph Burd's will.

"5. The settlement and confirmation of the administration account of Hubley and Patterson, executors of Joseph Burd, by the Orphans' Court of Cumberland county, on the 31st day of August, 1841, given in evidence by the plaintiff, shows an administration of that estate, leaving of its assets in the hands of the executors but $886.19, and the receipts, since the settlement of that account, to the legatees under Burd's will, and for expenses incurred in reference to his estate, shows that balance more than paid out by them, and these payments and disbursements having been made by the executors of Burd, before any legal claim was made upon them by these plaintiffs, for their distributive shares of John M'Gregor's estate, these payments by Burd's executors, as against these distributees under the *scire facias* in suit, are good payments of the assets out of the hands of the defendants, so as to protect them under the seven years' limitation of the 18th section of the Act of 19th April, 1794, and 19th section of the Act of 8th April, 1833.

"6. These *scire facias* not being founded upon a lien on lands, the joinder of the executors of Joseph Burd, deceased, with the administrator of William Bard, deceased, who survived him, is erroneous, and on them there can be no recovery against these defendants contesting."

The court, FISHER, J., charged the jury as follows:

"On the 14th of May, 1821, the account of Joseph Burd and William Bard, administrators of the estate of John M'Gregor, deceased, of this county, was passed by the register, and on the 16th the Orphans' Court decreed a balance in their hands of $6,986.37, subject to distribution according to law. This balance, it is alleged, was not paid to the heirs, and a transcript of the account was filed in the Common Pleas, at the instance of Robert Potter and Agnes his wife—Mrs. Potter being one of the heirs of John M'Gregor. On that transcript, the plaintiffs in the two cases now trying, issued their writs of *scire facias* for the recovery, by each, of one-third of the said balance on the account of the 14th of May, 1821.

[Burd's Executors *v.* M'Gregor's Administrator.]

" The first ground which the defendants set up, to avoid the payment of the amounts claimed, is contained in their first and second points.

" These two propositions are not correct. When a transcript is filed from the Orphans' Court, a *scire facias* may issue, and the debt due be recovered upon it, although the lien created upon real estate, by its entry, may have been lost, and although the writs issued in these cases are not as full and perfect as they might have been, we cannot say that they are so informal as to preclude the plaintiffs recovering, in these cases, of any amount due them, on the account, as decreed in the Orphans' Court. The next ground of defence is raised by the defendant's fourth point. The court read the point, and answered it as follows: Admitting that, for some purposes, the debts in question may be considered as simple contract debts, yet they are not, in reality, such, but are debts of record, and evidenced by the decree of the Orphans' Court. To such claims, the Statute of Limitations, barring debts not sued for within six years after they become due, does not apply.

" The next ground of defence is raised by the defendant's sixth point. The court here read the point, and answered it as follows : This proposition is not correct. If there is anything in the facts constituting a defence, the defendants ought to have pleaded this in abatement to the writs of *scire facias ;* this they did not do, but have pleaded other pleas, and gone to trial. The jury having been sworn, as to defendants alone, we instruct you that, under the pleadings, the facts upon which the point is predicated, cannot avail the defendants.

" Having thus disposed of the points of law which require no facts to be submitted to the jury for their consideration, we will now consider those which do. The first one is raised by the defendant's third point. The Statute of Limitations, of the 8th of April, 1833, only applies to the cases of executors and administrators who have distributed the estate amongst the intestate's known,—those relations who did not claim their shares within seven years from the decedent's death ; but does not apply to cases where executors and administrators retain the funds in their hands, and have never made distribution. If Burd and Bard did not pay out the money to other claimants, this statute does not apply to this case. The remaining point not considered, is the fifth. The court here read the fifth point, and answered it as follows: This proposition is predicated upon the fact that, before the 21st day of July, 1841, the defendant paid out to the heirs and legatees of Joseph Burd, the sum of $16,848.14, which is more than they had received, and is correct, if neither Messrs. Hubley nor Patterson had notice of the claims of the plaintiff. This act was passed to protect administrators, in the

event of a distribution of the estate by them, without notice of the existence of the claim sought to be recovered.   If Messrs. Patterson and Hubley had no notice of the claim of the plaintiffs, before they paid out the money, then the statute applies, and the claims of the plaintiffs are barred by its operation.   Whether they or either of them had notice, is a fact for the jury to determine from the evidence.   Mr. C. B. Penrose, whom the jury will remember was the administrator, both of Rose Conner and Alexander M'Gregor, at the time of the death of Burd, and continued to be so for some years after the defendants proved the will and took out letters on the estate of Mr. Burd.

"Mr. Penrose tells you that, before 1839, he saw Mr. Patterson, one of the executors, and had a conversation with him on the subject of Mr. Burd's estate, and requested him to settle an account.   Mr. Burd (Patterson,) asked him (says Mr. Penrose,) if he had any receipts for the money he had paid to the distributees of M'Gregor.   He said he had not, but that he had given Mr. Burd receipts for all he had paid, and he would find them with Mr. Burd's papers, and there would be no difficulty in settling the estate.   If the jury believe this testimony of Mr. Penrose, who is a competent witness to testify in this case, and whose connection with the plaintiffs will be taken into consideration by the jury, in passing upon his credibility, the defendants had notice of the claim of the plaintiffs, before they paid out the estate to the legatees and others; and therefore the statute referred to in this point, is not a bar to the plaintiffs' claim.   If, upon considering this last point, you think the defendants had notice of the claim of the plaintiffs, before they paid out the money to the legatees of Mr. Burd, then there is another question of much importance arising in this case, which is, are these claims in law presumed to be paid by the lapse of time?   Legal presumptions are founded upon the experience we have of human action; and as men are generally anxious to collect their just dues within a reasonable time, it is rational to presume that, after the lapse of many years, debts have been paid; and hence the rule that, after twenty years, claims of the character of these in question are presumed to be paid.   After that lapse of time, the presumption is so violent that it is evidence of payment, and is as binding on the jury as a receipt in full, or evidence of the payment of money.   The administrators' account, which evidences the debts in question, was confirmed on the 16th of·May, 1821, and the balance it exhibits is presumed in law to be paid. The jury are bound to consider the lapse of time as evidence of payment; but, like all other evidence founded on presumptions, it is liable to be rebutted by proof of non-payment, or by circumstances going clearly to satisfy the jury that payment has not been made.   When a receipt for the payment of money is

produced, it is not absolute proof of payment, but we presume payment from its existence. But the presumption may be rebutted by proof that it was obtained by fraud, or by duress without payment. A witness swears he saw a sum of money paid; the testimony raises a presumption of payment, but it may be rebutted by proof that the witness had, wilfully or by mistake, sworn to that which is false.

" In the present case, to rebut the presumption of payment, the plaintiffs have given much evidence, which may be considered under two classes; the first as excusing the delay in bringing suit, on account of the existence of different claimants to the fund, each insisting that they were the true heirs of John M'Gregor, and subsequently, on account of a controversy regarding the amount due Robert Potter and Agnes his wife, which arose after it was ascertained who were the heirs of John M'Gregor. The pendency of these suits cannot rebut the presumption of payment. Their existence did not necessarily prevent the present plaintiffs from these actions. They could have brought them at any time pending these suits, and the delay, if any, caused by them, is not sufficient to rebut the presumption of payment. In connection with other circumstances, they may be of some little weight, but by themselves they cannot have that effect.

" The second class of facts, which it is contended rebuts the presumption of payment, consists of the conversations, correspondence, declarations, and acts of Mr. Burd, subsequent to the 16th of May, 1821. Mr. Penrose tells you, that in 1828 he was employed for Rose M'Gregor and John M'Gregor, the plaintiff's intestates; that he applied to Mr. Burd for payment; that he declined frequently to pay the money, on account of suits brought against him by Samuel M'Gregor and others, who also claimed to be heirs. On the 8th of November, 1830, these suits having been ordered for trial, the plaintiffs suffered nonsuits. After this, Mr. Penrose says, he again applied to Mr. Burd, for payment of the shares claimed by the plaintiffs; that some delay occurred in making a payment, from the fact that nonsuits had only been entered, which did not preclude the bringing of new actions. Mr. Penrose also says, he saw Mr. Burd on the 8th of December, 1831, in relation to these claims; but Mr. Burd told him he had not the money, but would make a partial payment, and give him every dollar he had in bank, and would have to sell his real estate to pay the claims. Mr. Penrose further says, that on that day Mr. Burd gave him his check on the Carlisle Bank, for $1905.86; that the next day he sent the check back, and got two checks in return, and drew the money. Mr. Penrose also says, he urged Mr. Burd from time to time, to pay him the money; that he did not press, but in-

dulged him; that Mr. Burd agreed, in 1832, to make him a payment, and that in pursuance of that promise, in May, 1832, made to him an assignment of twenty shares of stock of the Bank of Pittsburgh, the par value of which was $1000, and at the same time he gave a power of attorney to draw $120, the dividend due on the stock. Mr. Penrose also says, that Mr. Burd paid him $375, on the 30th of March, 1833, and on the 9th of April, 1833, $640; and that this was the last payment Mr. Burd made to him for the M'Gregor heirs.

"Besides this testimony, we have in evidence the letters written by Mr. Penrose to Mr. Burd, and the receipts given by him to Mr. Burd. It is also in evidence, that Mr. Burd died in March, 1834, and on the day of his death, Mr. Kenower tells you, that Mr. Burd came to his house, and told him that he was sheriffed, or would be, and asked witness if he had any money. Mr. Burd said that he and Mr. Bard were the executors of a certain M'Gregor; that Bard was the acting executor, received the money, and failing to pay it out, that he (Burd) became accountable for it to the heirs. Burd said he had paid some, and was called upon to pay more, and wanted $1000. This testimony of Mr. Kenower, it is contended by the defendants, cannot be considered as a general acknowledgment of indebtedness, nor be used to rebut the presumption of payment, arising from the lapse of time, but must be referred to a payment, that was supposed to have accrued to the plaintiffs, in consequence of the claim of Agnes Potter, one of M'Gregor's heirs, being defeated by her husband's having taken a tract of land belonging to the M'Gregor estate, at the valuation, and the valuation money of which, had been held by the court of Common Pleas, to be a set-off in an action brought against Mr. Burd, by Mrs. Potter, to recover her distributive share of the money received by him and Bard. This judgment, you will remember, was, after the death of Mr. Burd, reversed by the Supreme Court, and a recovery had afterwards by Mrs. Potter. If the $1000 was wanted by Mr. Burd, to pay the money supposed to be due the plaintiffs, in consequence of the first decision in Mrs. Potter's case, then, Kenower's testimony ought not to be taken as an admission of indebtedness at all, and can have no effect to rebut the presumption of payment. To what Mr. Burd referred, in his conversation with Mr. Kenower, is for the jury to determine. If he referred to what was due, on account of the two-thirds of the balance, as settled by the Orphans' Court, it is strong evidence to rebut the presumption of payment. In determining whether the presumption of payment has been rebutted, the jury will consider the evidence of Mr. Penrose, the various payments made to him, his receipts given to Mr. Burd, his correspondence with Mr. Burd, and the evidence of Mr. Kenower; and from all

[Burd's Executors *v.* M'Gregor's Administrator.]

of them will decide, whether the presumption of payment is rebutted. If th.s evidence satisfies the jury that the debt was never paid, and is strong enough in your minds to repel the legal presumption of payment, arising in these cases, your verdict will be for the several plaintiffs, for such amounts as you find to be due to them respectively."

The admission of Charles B. Penrose as a witness, and the charge of the court, were assigned as errors.

*Williamson* and *Hepburn*, for plaintiff in error, as to the admission of Mr. Penrose as a witness, referred to *Carl* v. *The Commonwealth*, 9 S. & R. 67; *Lawson* v. *Copland*, 2 Bro. C. R. 156; *Russell's Case*, 5 Coke, 25, 28; *Keech* v. *Rinehart*, 10 Barr, 242; *Pry's Appeal*, 8 Watts, 255; *Chamber's Appeal*, 10 Barr, 443; 3 Leon. 241; 1 Ventr. 292; *Price* v. *Morgan*, 2 Chan. Ca. 217; Dunlop, 515; Doc. & Stud. Dial. 2 ch. 10, p. 158; *Bloom's Appeal*, 3 Har. 403; *Hatz* v. *Snyder*, 2 Casey, 511; *Griffith* v. *Redford*, 1 R. 197.

If the case of *Rowland* v. *Harbaugh*, 5 Watts, 365, be regarded as law, this *scire facias* cannot be sustained, and the testimony should not have been received. The act under which the transcript was filed, and *scire facias* upon it, manifestly contemplates it as a proceeding against the real estate bound by the transcript, and limited to that, and not a general personal proceeding, against the representatives of a deceased administrator, whose lands were bound by the transcript filed in his life-time.

The Statute of Limitations applies to defeat a recovery. The plaintiff's demand is a common debt, and in claiming against the defendants, executors of Joseph Burd, he must do so as *a general* creditor of his estate. *Thompson's Appeal*, 10 Harris, 16, 17; Story, Eq., § 1257-1259; *Hart* v. *Bulkley*, 2 Edw. 70; Angell on Limitations, 203, 207, § 177; Statute 1788, c. 66; Ib. 1791, c. 28; *Trecothic* v. *Austin*, 4 Mason, 16, 17, 18, 29, 31, 32; *Dexter* v. *Stewart*, 7 John. C. R. 52; *Kip* v. *The Bank of New York*, 10 Id. 63; *Moses* v. *Murgatroyed*, 1 Id. 119; *Decouch* v. *Savatier*, 3 Id. 190; *Deering* v. *Torrington*, 1 Salk. 79; *Heath* v. *Henley*, 1 Cha. Ca. 20; 20 Johns. 576; *Stert* v. *Mellish*, 2 Atk. 610; *Bukford* v. *Wade*, 17 Ves. 87; 2 Madd. Ch. 244, 245; *Vernon* v. *Vaudry*, 2 Atk. 119; *Philadelphia Bank* v. *Craft*, 16 S. & R. 347; *Wilson* v. *Wilson*, 3 Binn. 55; *Clark* v. *Herring*, 4 Id. 33; *Morrow* v. *Brenzer*, 2 R. 185; *Ramsey's Appeal*, 4 Watts, 74; *Roshing* v. *Chandler*, 10 Barr, 370; *Hammond* v. *Jethro*, 2 Brownl. 99; *Commonwealth* v. *Miller*, 8 S. & R. 456.

*Watts* and *Miller*, for defendant in error, referred to Act of

15th March, 1832, § 6 ; Williams on Ex'rs, 331; *McNeal* v. *Holbrook*, 1 Casey, 190; Broom's Leg. Max. 428 ; *Carter* v. *Cameron*, 7 Watts, 51; —— v. *Woodburn*, 7 W. & S. 162 ; *Smiley* v. *Todd*, 5 H. 101; *Richardson* v. *Richardson*, 9 B. 428 ; *McPherson* v. *Cunliff*, 11 S. & R. 422 ; *Painter* v. *Henderson*, 7 B. 48 ; *Ashford* v. *Ewing*, 1 Casey, 213 ; *Logan* v. *Richardson*, 1 Barr, 273 ; *Musser* v. *Oliver*, 9 H. 366 ; *Commonwealth* v. *Meltz*, 10 Barr, 527.

Under the decisions in *Alexander* v. *McMany*, 8 W. 504 ; *Steel* v. *Henry*, 9 Watts, 523 ; and *Heckert's Appeal*, 12 H. 486, the provisions of the will of Mr. Burd, would suspend the running of the Statute of Limitations, even if it were applicable to the case in hand.

Can the *scire facias* be maintained? The plaintiffs in error object to its want of form. A *scire facias* is a judicial writ, issuing out of the court itself. 6 Bacon, Abr. 103 ; Troubat & Haly's Practice, (Wharton's edition,) 303. Any defect in form, is the act of the court, not of the party applying to the court for a remedy. The objection is particularly, that the transcript gives a mere lien upon lands, and that no lands are mentioned, against which the plaintiffs below demanded to have execution ; that the lien of the transcript is gone by, not being revived within five years, and that it will not authorize any proceedings on it subsequently. *Commonwealth* v. *Mateer*, 16 S. & R. 416 ; *Hengst's Appeal*, 12 H. 413 ; *Haage's Appeal*, 5 Id. 190 ; *Ducommon's Appeal*, 5 Id. 270 ; *Lang* v. *Kepple*, 1 Binn.

The opinion of the court was delivered May 18, 1857, by

LEWIS, J.—On the 16th of May, 1821, Joseph Burd and William Bard, administrators of John M'Gregor, deceased, settled their account in the Orphans' Court, and on the 26th May, 1821, that court confirmed their account, finding the sum of $6986.37 in their hands, which was ordered to be distributed according to law. On the 18th October, 1832, a transcript of this balance was filed in the Common Pleas of Cumberland county. On the 2d September, 1852, a *scire facias* issued at the suit of William M. Penrose, administrator of Rose M'Gregor, claiming one-third of the sum in the hands of Burd and Bard. This is the action which has been tried in the court below, and which is now here for review. The *scire facias* issued against the respective personal representatives of Burd and Bard. Judgment by default was entered against Thomas Carlisle, the administrator of William Bard, and the jury was sworn to try the issues, between the plaintiff below and the executors of Joseph Burd. It is material to a proper understanding of the questions involved, to bear in mind, that the pleas

364 SUPREME COURT [*Harrisburg*

are: 1st. *Nil debet.* 2d. *Actio non accrevit, infra sex annos.*
3d. That the defendants held no land, bound by the lien of the
said transcript. 4th. That they had fully administered the es-
tate of their testator. 5th. Payment; and payment with leave
to give the special matter in evidence. 6th. That more than
seven years have elapsed since the decree of the 16th May,
1821, without legal claim having been made by the relations of
the decedent; that Joseph Burd died before the first of April,
1834, and that his executors settled their administration account,
on 31st August, 1841, and distributed the balance to the per-
sons entitled under the will of Joseph Burd, deceased. 7th. That
no legal claim was made, for the plaintiff's share of the estate
of John M'Gregor, within seven years after his decease. Neither
of these pleas raises any issue, in regard to the death of Joseph
Burd before that of William Bard. The legal effect of such a
fact was, therefore, immaterial to the trial of the issues. The
defendants had no right to demand instructions upon it, and, if
given against them, they have no right to complain that they
were erroneous in principle. It is sufficient here, that the court
did not permit them to gain any advantage before the jury, by
raising a point of law, not involved in the issues joined. It is,
therefore, unnecessary to say, whether the survivorship of Joseph
Burd ought to have been pleaded in abatement or in bar. It
certainly ought to have been pleaded in some form, in order
that the plaintiff might reply the insolvency of William Bard.
If we were to found our judgment on the evidence, we should
be of opinion that William Bard was insolvent, and also that he
died before Joseph Burd. But as the question was not legiti-
mately raised before the jury, the evidence on the subject is
immaterial. If it was admitted on the *scire facias,* that Joseph
Burd died first, the effect of the survivorship of William Bard,
might, perhaps, have been raised by demurrer, motion in arrest
of judgment, or on writ of error. But as the record stands, the
question is not before us. The balance in the hands of Joseph
Burd and William Bard, was settled by a judicial decree of the
Orphans' Court. That decree is conclusive of the sum due to
the proper distributees of John M'Gregor. It was a debt of the
accountants, for which their real and personal estates were
liable. The removal of a transcript of this decree to the Com-
mon Pleas, did not change its character. It was still a debt
for which they were personally bound. It is true that the Act
of Assembly, authorizing the filing of the transcript, declared
that it should be a lien on the real estate of the accountants;
but it is also true, that the same act authorizes the recovery of
the claim, by action of debt, or *scire facias* on the transcript.
In such an action, the judgment is not *de terris,* but general,
like any ordinary judgment on a personal liability. The plea,

that the defendants held no lands bound by the lien of the transcript, is, therefore, immaterial. The action, as we have seen, is in the nature of an action of debt on a judicial decree, and not an action of debt grounded on any lending, or contract without specialty. It is, therefore, not within the meaning of the Statute of Limitations, of May 27, 1713. 13 S. & R. 399; 6 Watts, 379.

But it is urged, that the Act of Assembly, which bars distributees, who neglect to lay legal claim to "their respective shares," within seven years after the decease of the intestate, is a bar to the present action. Its terms show very distinctly, that it operates upon distributees only, and not upon creditors; and the construction heretofore given to that statute, is, that it was not intended to enable an administrator to keep the money of the estate in his own pocket. It was passed for the purpose of protecting him from being compelled to pay the money a second time, after he had distributed it by mistake to persons not entitled, or had given to some distributees more than their respective shares, to the exclusion of others, who would have been entitled, had they presented their claims in due time. As against Burd and Bard, the statute would have barred the plaintiffs as distributees, if they had made any distribution, however erroneous. But they made none. We are to take it, that they died with the money in their pockets, or after converting it to their own use. As against their estates, in the hands of their administrators, Rose M'Gregor's administrator is a creditor. He must, on a deficiency of assets, come in *pro rata* with other creditors. He is entitled, however, like every other creditor, to a preference over legatees, heirs, or distributees of the estates of Burd and Bard. The payment of the assets of Joseph Burd's estate, to the legatees under his will, after full notice of the claim of Rose M'Gregor's administrator as a creditor, is no bar to that claim. The limitation of seven years, has no application to such a claim.

According to the construction given to the several Acts of Assembly, relative to estates of decedents, a judgment in a common law action, against an administrator or executor, is only a judgment against the estate of the decedent. It does not bind the executor or administrator personally, although he may have omitted to plead that he had fully administered. Such a plea, if put in, is now never tried in a common law action. The Orphans' Court has exclusive jurisdiction over it.

The plea of *nil debet*, cannot be received to invalidate the decree of the Orphans' Court. That decree conclusively ascertains the balance in the hands of Joseph Burd and William Bard, subject to distribution among the next of kin of John M'Gregor, deceased. The plea merely puts in issue the claim

of Rose M'Gregor, as one of the persons entitled. Under the issue joined on it, proof of her title, as next of kin, may be given on the one side, and evidence of payments on the other. That plea, and the plea of payment, have been disposed of by the jury, and there is no legal ground for disturbing their verdict on these issues.

It is alleged, that there is error in admitting Charles B. Penrose as a witness for the plaintiff below. The objection is founded on the assumption, that he had been guilty of negligence in collecting the claim. If such negligence existed, the cause of action founded upon it, must have been complete on the expiration of seven years from the filing of the transcript in 1832. An ordinary action at law would, therefore, be barred in 1845. But there is no presumption of negligence in the case. Where the parties interested make no complaint, the presumption is, that the delay was for a purpose beneficial to them; and strangers, or debtors, who desire to raise up such an objection, for the purpose of defeating the claims of the parties interested, must be prepared to establish the existence of such negligence, as will make the witness incompetent. But the decree of the Orphans' Court, confirming the final account of Mr. Penrose, as administrator, and discharging him from the trust, puts an end to all claim against him, on account of failing to collect this demand. There has, it is true, been great reluctance, on the part of the courts of common law, in giving full effect to the decrees of the Orphans' Court. But the jurisdiction of that court, and the conclusiveness of its decrees, in the settlement of administration accounts, has been constantly maintained by the legislature, by repeated enactments. It is time that this unprofitable struggle should cease. A feeble attempt is made, to bring Mr. Penrose within the rule, which excludes an assignor of a *chose in action*, from being a witness to support his claim. But the discharge of one administrator, and the appointment of another, is nothing like an assignment. The discharged administrator has nothing to do with the appointment of his successor in the trust. He makes no transfer of the claims of the decedent. He receives no value for them. He has not necessarily any interest in them. He is, therefore, a competent witness to support them.

On the whole, we see no error in the proceedings below.

Judgment affirmed.