IN THE MATTER OF THE APPEAL OF EMIL MOORES.

[See 65 Mich. 652.]

*Will—Lands subject to legacy—Sale—Notice—Jurisdiction of probate court.*

A wife by her will bequeathed $15,000 to her son, to be paid to him on arriving at full age, and devised certain real estate to her husband. The will provided that if, after the payment of her debts and the charges of administration, the estate proved insufficient to pay the legacies in full, they be paid in a specified order, the son's legacy being given priority over the devise to the father. The husband was appointed executor, and sold a portion of the land devised to him at private sale, conveying the same in his individual character and as executor, and such proceedings were thereafter had in probate court as resulted in his being directed to pay over to his son's guardian the amount due from him to the estate, which payment he failed to make, and absconded. An administrator was appointed, who, after a judgment had been rendered upon the executor's bond for the amount due the legatee, and after return of an execution unsatisfied, filed a petition in the probate court for the sale of the land devised to the husband to pay the balance due on the son's legacy; and in affirming an order for such sale it is held:

*a*—That the land devised to the husband is subject to the son's legacy.

*b*—That the purchaser from the husband is chargeable with notice of what an examination of the probate records would have disclosed, namely, that there had been no settlement of the estate, and that the son's legacy had not been paid; and that he could get no better title under his deeds than the husband had at the time of their execution.

*c*—That, under the facts appearing in the case, the probate court had jurisdiction to make the order, and a resort to equity was unnecessary to subject the land to the payment of the legacy.

*d*—That the right of the legatee to follow the land for the payment of his legacy was not barred by the statute of limitations, the estate never having been closed, and it being apparent from the terms of the will that it was not intended that it should be closed in the six years within which, as claimed,

an executor can be authorized to sell lands to pay legacies; the case being ruled by *Church v. Holcomb*, 45 Mich. 29.

Error *to* Saginaw. (Gage, J.) Argued January 7, 1891. Decided February 6, 1891.

Appeal from order of probate court granting the petition of an administrator for the sale of certain devised lands to pay a legacy. Judgment of circuit court, affirming order of probate court, affirmed. The facts are stated in the opinion.

*Hanchett, Stark & Hanchett*, for petitioner, contended:

1. In support of the claim that the legacy was made a charge upon the real estate devised to the husband, counsel cited *Tewksbury v. French*, 44 Mich. 100; *Cummings v. Corey*, 58 Id. 496, 500; *Palms v. Palms*, 68 Id. 361; *Eyer v. Beck*, 70 Id. 181; *Morrison v. Sessions Estate*, Id. 308; which charge is of such a nature that it may be enforced in equity; citing *Dill v. Wisner*, 88 N. Y. 153; *Bugbee v. Sargent*, 23 Me. 269; *Grode v. Van Valen*, 25 N. J. Eq. 98; and the fact that the legatee is an only son is to be taken into account in deciding upon the intent of the testatrix to have the provision for him made good out of her estate, and a charge upon the realty; citing *Van Winkle v. Van Houten*, 3 N. J. Eq. 172, 190, 191.

2. The lien of a legacy charged on land is like a mortgage lien, and can be divested only by actual payment to, or release by, the legatee, unless the will provides some other mode; citing *Schanck v. Arrowsmith*, 9 N. J. Eq. 314; *Terhune v. Colton*, 10 Id. 21; *Grode v. Van Valen*, 25 Id. 95; *Blauvelt v. Van Winkle*, 29 Id. 111; *Jenkins v. Freyer*, 4 Paige, 50; *Phillips' Appeal*, 7 Atl. Rep. 918; *Lovejoy v. Raymond*, 58 Vt. 509; *Bidwell v. Whitaker*, 1 Mich. 472; *Lafferty v. Bank*, 76 Id. 35.

3. The authority of the executors to sell is confined to real estate "not specifically devised," and they could only apply under the statute which authorizes a sale under leave of the court to pay a legacy when made a charge upon land; citing Comp. Laws 1857, § 3064; How. Stat. § 6050, as amended by Act No. 119, Laws of 1883 (3 How. Stat. p. 3592).

4. The deeds to Moores only conveyed to him the interest which George A. Lathrop had in the land as devisee. As such devisee he could take possession and receive the rent and income until the estate was required to pay debts or legacies charged

thereon, and he could convey his estate such as it was; citing Act No. 203, Laws of 1875; .How. Stat. § 5875; *Streeter v. Paton*, 7 Mich. 350, 351; *Howard v. Patrick*, 38 Id. 802; *Lafferty v. Bank*, 76 Id. 59.

5. Emil Moores took the land subject to the charge made thereon by the will, and, as he makes his title through the will, he must be charged with full knowledge of its provisions; citing 2 Red. Wills, 210; 1 Story, Eq. Jur. (12th ed.) § 566*b*; *Harris v. Fly*, 7 Paige, 421, 424; *Burns v. Berry*, 42 Mich. 176, 180; *Pierce, v. Holzer*, 65 Id. 273; *Lafferty v. Bank*, 76 Id. 59.

6. The probate court had jurisdiction to grant the license to petitioner; citing *People v. Circuit Court*, 11 Mich. 393; *Winegar v. Newland*, 44 Id. 367; *Church v. Holcomb*, 45 Id. 29; and the proceedings appealed from were expressly authorized by How. Stat. § 6050, as amended in 1883.

7. The suit upon the bond does not affect the lien, or work a forfeiture of the same; citing *Pierce v. Holzer*, 65 Mich. 273, 274; *Terhune v. Colton*, 10 N. J. Eq. 21; *Schanck v. Arrowsmith*, 9 Id. 314; *Reynolds v. Bond*, 83 Ind. 36.

8. The lapse of time does not oust the court of jurisdiction, because the circumstances of the estate, the conduct of the, executor, Lathrop, and the attempt of petitioner to enforce the legacy, continue such jurisdiction; citing *Larzelere v. Starkweather*, 38 Mich. 96, 100, 101; *Church v. Holcomb*, 45 Id. 29; and, further, the terms of the will do not contemplate a sale except as the executors could make it without sacrifice.

*Wheeler, McKnight & Grant* (*Wisner & Draper*, of counsel), for appellant, contended:

1. The probate court had no jurisdiction to make the order appealed from. A court of equity is the only tribunal that can do justice between the parties, and protect the rights of all; citing *Brown v. Knapp*, 79 N. Y. 136; *Atwood v. Frost*, 51 Mich. 360.

2. By the fourth clause of the will, Lathrop became the owner of the lands in controversy, and,' if subject to any claim thereon, it was that they might be sold for payment of debts or legacies within six years. He and his grantor had been in actual possession for more than eleven years before this petition was filed. Moores' rights became vested while this six-year limitation was in force, and he cannot now be disturbed. The act of 1881 (No. 236) is not retroactive; citing *Van Fleet v. Van Fleet*, 49 Mich. 610.

3. The land was not charged by the will with the payment of the $15,000 legacy. This legacy was payable out of the personalty of the deceased, if that was sufficient, and the fact that the

executor wasted it does not give the legatee the right to fol-
low the land. There is nothing in the record showing that the
personal property was not sufficient for the purpose named.
If it was not, the petitioner should have shown this fact; citing
*Duncan v. Wallace*, 114 Ind. 169.

4. Lands specifically devised are not charged with payment of
legacies, unless the will directly charges them, or an intention
so to charge them clearly appears from the will; citing *Robin-
son v. McIver*, 63 N. C. 645; *Belcher v. Belcher*, 12 Atl. Rep.
230; *Wright v. Denn*, 10 Wheat. 204; *Hoyt v. Hoyt*, 85 N. Y.
142; *Heslop v. Gatton*, 71 Ill. 528; *Chase v. Davis*, 65 Me. 102;
*Davenport v. Sargent*, 63 N. H. 538.

5. The intention of the testatrix, as shown by the will, was that
her property not specifically devised was to be used in paying
the legacies in full, and, if it should be found insufficient to
pay all, then they were to be paid in the order named; citing
2 Red. Wills, 462; *Davenport v. Sargent*, 63 N. H. 538; *Chase
v Davis*, 65 Me. 102, 107.

MORSE, J. April 13, 1875, Helen L. Lathrop executed
her last will, in which she gave her son, John N. Derby,
a legacy of $15,000, and devised to her husband, George
A. Lathrop, certain lots, describing them, in East Sag-
inaw. This will was duly admitted to probate December
30, 1875, and George A. Lathrop and Augustine S. Gay-
lord appointed executors, who both duly qualified. Gay-
lord, however, took no part in the actual management of
the estate, and died June 21, 1877.

The will of Mrs. Lathrop gave all her personal cloth-
ing and jewelry to a sister. Then follows the bequest to
her son, John N. Derby, of the homestead and all the
furniture and personal property therein;—

"Also the sum of $15,000 in money, the said money to
be kept invested, and the interest thereof applied to his
maintenance and suitable education until he shall attain
the age of 21 years, the principal and any accumulation
of the interest not required for the purpose aforesaid
then to be paid to him."

Then follows a devise to her husband as follows:

"*Fourthly.* I give and devise unto my beloved husband,

George A. Lathrop, his heirs and assigns forever, lots 4 and 9, and the south 24 feet of lot 5, in block 15, according to Hoyt's plat of East Saginaw, with the houses thereon."

She also gives him "block 10 in Derby's addition to the village of Salina, now in the city of East Saginaw, to dispose of the same when and how he may deem proper," the proceeds of the same to be used for the benefit of his son, George D. Lathrop. She also devises certain real estate to her sister, and $500 to a domestic in the family, and $6,000 to her executors in trust, the interest of such sum to be paid in equal proportions to a brother and sister annually, during their natural lives, the principal sums at their deaths to be paid to her son, John N. Derby, if then living and of the age of 21 years; the said sum to be mainly made out of the sale of real estate. The will then provides that if, after the payment of her debts and the charges of administration, her estate shall prove insufficient to pay the legacies in full, then she directs that they be paid in the following order:

1. The bequest to her sister of her personal clothing and jewelry.

2. The bequest to her son, John N. Derby.

3. The devise and bequest in the fourth clause of her will, to her husband, George A. Lathrop.

—And thereafter naming the order in which she wishes the other bequests paid. All the rest, residue, and remainder of her estate she gives to her son and husband, share and share alike. She appointed Lathrop and Gaylord her executors, and authorized and empowered them to sell and convey any and all of her estate not specifically devised in the will, for cash or upon credit, or both, as to them might seem best, and out of the proceeds of such sales to pay and discharge the debts and expenses of administration, as well as the legacies;

"said legacies to be paid as soon as convenient after my decease, without sacrifice to my estate."

This matter comes before us upon petition to the probate court and order of such court, appealed from to the circuit court and affirmed and modified, and from that court brought here for review upon writ of error. The points involved in said petition and order will be discussed as we proceed. The modification of the probate order made by the circuit court is not material to this issue. There were findings of fact by the circuit judge, and we shall first give a summary of so much, of such findings as is necessary for an understanding of the matters at issue.

February 24, 1876, Lathrop, as executor, filed an inventory in the probate court, showing real and personal estate to the value of $26,468.91. October 25, same year, he filed a partial account, showing cash received by him up to October 23, $5,266.23; disbursements, $2,124.89. August 21, 1879, another account was rendered, showing total amount received by him, $12,734.52, and total amount expended, $12,137.02, leaving balance of $597.50. In the inventory made and filed in the probate court the land devised to Lathrop, and block 10 of Derby's addition, devised to him for the benefit of his son, were not included. December 18, 1877, Lathrop traded seven lots in this block 10, and lot 9, block 15, Hoyt's plat, to one Henry Colclaugh for a farm in Royal Oak, for the agreed consideration of $3,500. The title to the farm was taken in the name of Joseph Lathrop, of Detroit, and the transaction was had without any action by the probate court thereon. June 18, 1881, Lathrop sold to Emil Moores lot 4 and the south 24 feet of lot 5, block 15, Hoyt's plat of East Saginaw, being part of the property devised to him in the fourth clause of his wife's will, for $2,000, which sum Moores paid him in cash, and which

was its full value at the time of such sale. No proceed-
ings were had in the probate court at the time. Moores
knew that said property was a part of Helen L. Lathrop's
estate, but did not himself investigate the title, but left
that entirely with his attorney, and in his purchase relied
upon the report and opinion of such attorney. The con-
veyance was in two deeds,—one a quitclaim from George
A. Lathrop, and the other an executor's deed, in which
Lathrop covenanted only as against his own acts.

Lathrop, before February 9, 1883, paid all the debts
and expenses of death and administration except his own
charges. He made sale of the real estate devised in the
sixth clause of the will to Mrs. Lathrop's sister, Caroline
E. Hayden, for the purpose of paying debts and the
legacy to John N. Derby, under due application to the
probate court and the order of such court granted on
such application, and had converted into cash all the
rest of the real and personal estate of his wife, except
two contracts for the sale of land, upon which there was
due about $115. June 3, 1880, the probate court ordered
that Lathrop should close the settlement of the estate
within six months. He failed to do so, and was cited
into court to account, and to show cause why he should
not pay over to the guardian of John N. Derby the
legacy due to him. Lathrop, in obedience to this cita-
tion, filed his account, upon which hearing was had.
This account was filed February 9, 1883. In this account
for the first time he charged the estate with the moneys
paid out by him in the farm transaction with Henry Col-
claugh, and charged as a credit to the estate the money
received by him in the same transaction. He also cred-
ited the estate with the $2,000 received from Emil
Moores. But the probate court struck out all the items
of said account on both sides, credit and debit, in relation
to the farm transaction, and also the $2,000 item received

from Moores. The record does not contain the full, itemized account. It shows only the items that were disallowed by the probate court. The account, as filed, showed total receipts, $33,821.16, and total cash disbursements, $29,980.62; leaving a balance in favor of the estate of $3,840.54, from which was to be deducted the compensation of Lathrop as executor.

It is also found as a fact that Lathrop took possession, after the probate of the will, of the real estate devised to him and his son, and received the rents and profits thereof, and paid the taxes and repairs. June 9, 1880, a paper was filed in the probate court showing that this property was not included in the inventory of his wife's estate, because the said estate had been supposed to be sufficient to meet all prior demands, and that individual possession of the property had been taken by said Lathrop. The moneys received by him for rents, and the moneys expended by him on said property, were included by him for the first time in his account of February, 1883, and on the hearing of such account all these items were stricken out. After striking out all these items heretofore mentioned in regard to the farm transaction and this property devised to him and his son, and disallowing an item of $500 paid by him to Mrs. Ihrig, the probate court charged him for $1,500 lost by mismanagement of certain property, and allowed him $355.44 for his services and expenses as executor, and a balance was struck, from which it would appear that he was found to be in debt to the estate in the sum of $5,177.70. It was also ordered that the legacy to Derby had the preference in the estate, and $6,601.04 was found to be still due and unpaid upon it; and Lathrop was directed to pay the said sum of $5,177.70 over to David H. Jerome, the guardian

of said Derby. Lathrop failed to make this payment, and, pending the hearing on account, absconded.

In October, 1883, Jerome, as guardian of Derby, took steps to bring suit upon Lathrop's bond as executor. Judgment was rendered in this suit December 3, 1885, for $6,100.88. The case went to the Supreme Court, and was affirmed April 28, 1887.[1] Execution was duly issued.and returned, and no property could be found out of which to pay such judgment. May 26, 1887, Jerome filed the petition in this case in the probate court, setting forth the essential facts, claiming that the land devised to Lathrop and his son had not been lawfully disposed of; that the same was legally still a part of Mrs. Lathrop's estate, and subject to the legacy of Derby; and praying that the same might be sold under the order of such court to pay said legacy, and that the lands sold to Emil Moores be first sold, and then the lands traded to Colclaugh for the farm in Royal Oak, and lastly, lot 10, block 10, of Derby's addition, sold to .Eli Le Clerc. All the parties interested were notified of the hearing of said petition. December 10, 1887, the probate court granted the petition, and found the balance due to Derby to be $8,722.66. Lathrop, before the filing of this petition, had been removed, and Jerome appointed administrator, in which capacity he filed such petition. The court ordered the sale of the property, changing somewhat the order in which the property was to be sold, but leaving the Moores land the first to be sold, as prayed in said petition. Moores appealed to the circuit court, stating his reasons.

Those relied upon here are as follows:

1. The probate court had no jurisdiction to make the order.

2. The executor, George A. Lathrop, having had in

---

[1] See 65 Mich. 652.

his hands sufficient assets and money to pay the legacy, the amount of the legacy unpaid must be collected of him and his surety on his bond, and there is, therefore, no lien on Moores' land.

3. The land was specifically devised to Lathrop, and not subject to the payment of Derby's legacy.

We are satisfied that the land devised to Lathrop was subject to Derby's legacy. It is expressly made so by the terms of the will, provided that, after the payment of the debts and expenses of administration, the estate shall be found to be insufficient to pay all the legacies in full. Moores cannot be considered a good-faith purchaser. He knew, or could have known by consulting the records in the probate court, that there had been no settlement of the estate, and that the legacy of John N. Derby had not been paid. He could get no better title to the land than Lathrop had at the time it was sold to Moores.

It is contended that there was personal property enough in the hands of Lathrop to have paid this legacy, and that Moores ought not to be held responsible for the wasting of it, or its misapplication by Lathrop. There is no showing in the record what the amount of the personal property was. The account of Lathrop, as settled by the probate court, shows that he had in his hands $5,177.70 only that could be applied on this legacy, when there was $6,601.04 due upon it. The account as allowed is not controverted, nor is it shown what his disbursements were, or where his receipts of cash came from. We must consider, therefore, that his expenditures were lawful and proper. If so, then there was not cash enough, without resorting to this real estate devised to him for his own use and that of his son, to pay this legacy in full.

The question, then, arises, who is to lose this $5,177.70 which Lathrop had in his hands, and ought to have paid on this legacy, but which he has squandered or stolen?

Shall the infant heir lose it, or shall Moores, who bought under the circumstances heretofore noted, lose what he paid upon the land? We think the land must pay it, or be used as far as it will go to do so. No one, if Lathrop had never sold the land, would deny the right of the probate court to subject the same under the will to the payment of the balance of this legacy. Lathrop could not be heard to say that he had received personal or other property of the estate sufficient to pay this legacy, but he had wasted or stolen it, and therefore Derby must look to him personally and his bonds to make up the deficiency, and that the lands, although not disposed of, and still in his possession, could not be sold by the probate court to pay such legacy. He could not thus profit by his own wrong. As Moores could get no better title than Lathrop, and stands in his shoes, the legatee has the same right against the land standing in his name, unless some laches or statute of limitations has deprived him of such right.

It is further urged against the authority of the probate court to make this order that the suit to subject this land to the payment of this legacy should have been brought in equity; that, if this land is charged with its proportion of the legacy, all the other lands sold or traded by Lathrop are equally chargeable, and all persons purchasing such lands must be made parties; that a court of equity only, in such case, can fix the rights of the different parties, and do justice between them. We are not informed by this record how much real estate the testatrix owned at her death outside of the homestead and the lands devised to Lathrop and Caroline E. Hayden, except as stated in the petition of Jerome; and in such petition it is not stated to whom the same was sold, or how much was received upon the sale of the same, but it would seem from the findings of fact that the same

was sold either under the order of the probate court or with the consent of such court; and the petition avers that there is no property remaining out of which to make this legacy, except the lands ordered to be sold, in response to the prayer of such petition. We cannot assume that the other real estate was sold for any other purpose than a lawful one, to wit, the payment of debts and this legacy to Derby; and it is expressly found by the circuit judge that the real estate devised to Caroline E. Hayden was sold by the order of the probate court for such purpose. In relation to the real estate traded to Henry Colclaugh, it was stipulated by Moores' attorneys that the same might be discharged from the payment of the Derby legacy upon the payment of $2,500, to be applied upon said legacy; the amount paid being considered equal to the value of said real estate. It must therefore be considered that the real estate purchased by Moores is still the property of Mrs. Lathrop's estate, and nearly, if not quite, all the property that can be used to pay the balance of this legacy. We do not think it was necessary to go into equity to subject this land to the payment of this legacy.

It is further claimed that the lapse of time is a bar to the enforcement of the right of the legatee to follow this land for the payment of his legacy; that the time in which an executor can be authorized to sell lands for payment of legacies was limited to six years under the statutes in force at the time of Mrs. Lathrop's death. The will was probated December 30, 1875. The executors qualified January 22, 1876. We think the court of probate had not lost its jurisdiction. The estate had never been closed, and there was a will, which, by its terms, evidently did not intend that the estate should be

closed in six years.  This case is ruled by *Church v. Holcomb*, 45 Mich. 29, 37, 38.

It must be remembered, also, that John N. Derby is the only heir at law of Mrs. Lathrop, and only he, George A. Lathrop, and Moores are interested in this question.   Derby is moving for the sale, and Moores, as heretofore ruled, must stand in the place of George A. Lathrop, and has no better right than Lathrop to contest these proceedings.  As against Lathrop, the wrong of Lathrop would excuse the lapse of time, as there has been no laches on the part of Derby.  Lathrop was brought to account while the estate was still in his possession as executor, and not closed; and as soon as Lathrop absconded proceedings were commenced, and have since been prosecuted with commendable promptness and vigor, to regain the scattered and wasted property of this estate for the purpose of applying it to the payment of this legacy. The same reasons which would prevent Lathrop from interposing the defense of lapse of time and laches against the subjection of this real estate to the payment of this legacy apply to Moores, and are a perfect bar to the same defense in his hands.

The finding of the circuit court, affirming and modifying the order of the probate court, is sustained, with costs, and it will be certified accordingly.

The other Justices concurred.