[Civ. No. 11446.   First Dist., Div. Two.   Dec. 16, 1941.]

GRACE H. CHARD, as Administratrix, etc., Respondent,
v. DANIEL F. O'CONNELL, Appellant.

Raymond Salisbury, J. A. Kennedy and John S. DeLancy for Appellant.

W. A. Lahanier and Abraham Glicksberg for Respondent.

DOOLING, J. pro tem.—This is an appeal from a judgment in favor of plaintiff. A previous judgment for plaintiff was reversed for lack of evidence to support it in *Chard v. O'Connell*, 7 Cal. (2d) 663 [62 Pac. (2d) 369]. The basic facts are fully stated in the opinion of the Supreme Court on the former appeal and we deem it unnecessary to extend this opinion by again reciting them.

Two matters presented on this appeal may be somewhat summarily disposed of. After an amended complaint had been filed defendant and appellant O'Connell made a motion for change of place of trial which was ordered denied. No appeal was taken from that order but appellant seeks to attack it on this appeal from the judgment. The

applicable code sections make it clear that this may not be done. Section 963, Code of Civil Procedure, authorizes the taking of an appeal from an order changing or refusing to change the place of trial. Section 956 of the same code after providing for the review of certain orders on appeal from a judgment concludes: "The provisions of this section do not authorize the court to review any decision or order from which an appeal might have been taken."

In the amended complaint plaintiff included a count based on fraud or undue influence. Since plaintiff in that count attempts to sue as an heir and expressly alleges that no administrator of her mother's estate had ever been appointed that count fails to state a cause of action. It was expressly held in *Holland* v. *McCarthy*, 177 Cal. 507 [171 Pac. 421], that an action to set aside a transfer of personal property by a decedent on the ground of fraud or undue influence must be brought by an executor or administrator and cannot be maintained by an heir in the absence of allegations of circumstances taking the case out of the general rule. See also the later cases of *Hall* v. *Alexander*, 18 Cal. App. (2d) 660 [64 Pac. (2d) 767], and *Samter* v. *Klopstock Realty Co.*, 31 Cal. App. (2d) 532 [88 Pac. (2d) 250]. No circumstances sufficient to take this case out of the general rule were alleged or proved.

It follows that the judgment must stand or fall under the first count alleging an express oral trust in favor of plaintiff and her brothers and sister.

The trial court found in that regard:

"That it is true that prior to and at the time of executing said assignment dated March 25, 1926, the defendant, Daniel F. O'Connell represented and stated to his mother, Mary J. O'Connell, that he could complete the settlement of the will contest with less difficulty if she would assign to him the money coming to her by reason of the settlement executed on or about December 22, 1925, and that he would receive said money for the benefit of her, Mary J. O'Connell, and her children; that it is true that at the time of the execution of said assignment, on or about the 25th day of March, 1926, defendant Daniel F. O'Connell obtained said assignment from his mother, Mary J. O'Connell, upon the understanding and subject to the agreement that he would hold the proceeds of such settlement for the benefit of all her

children and that he would divide the same equally between the children of Mary J. O'Connell to-wit, Anna Wulff and the defendants above named.''

A similar finding was held not to find support in the evidence in *Chard* v. *O'Connell, supra.* Under the doctrine of the law of the case the evidence must be substantially different on the second trial to justify us in upholding this finding.

On the second trial the witness Ed. O'Connell testified to three conversations concerning the subject matter of this suit at all of which defendant Daniel F. O'Connell and the decedent Mary J. O'Connell were present. These in chronological order were:

Shortly after the institution of the will contest in the estate of Daniel Moriarty, at which time ''my grandmother . . . mentioned that her children had never had anything, and she hoped that they would get enough out of it to take care of them, she hoped that they would get the money before—or while she was still living to enjoy it.''

Second, on Christmas day, 1925 (this would be three days after the compromise was arrived at in *Estate of Moriarty*). The testimony as to this conversation was the most detailed, the witness testifying that Daniel F. O'Connell stated that they were to receive a compromise for $35,000 and now all of the children were to receive their money and Mary J. O'Connell said that all the children who have had a hard time will now receive their share and that Dan was handling the entire affair for her. Further that Dan said that the money would be divided among all the children, $4,000 to each child, and the balance would be set aside for the maintenance of Mary J. O'Connell during her life, and after she passed away if anything was left over it was to be divided share and share alike.

In the third conversation, which the witness fixed at about March 12 to 14, 1926, he testified that Daniel F. O'Connell and Mary J. O'Connell discussed that the children were each to get $4,000.

It will be seen that in the second conversation will be found all of the elements necessary to constitute an express trust. The subject matter, the beneficiaries, the nature and quantity of their interests and the manner in which the trust was to be performed were all clearly stated. Each child was to get

$4,000 immediately, the balance was to be administered for the benefit of the mother during her lifetime, and at her death the residue was to be divided equally among the children.

The other two conversations while more fragmentary and less complete were consistent with and tended to confirm the understanding expressed in the second conversation. The second conversation followed the agreement of compromise by only a few days; the third conversation preceded the execution of the assignment from Mary J. to Daniel F. O'Connell on March 25, 1926, by less than two weeks. The evidence in our opinion was ample, if believed, to support the finding of the creation of an express trust.

It is true that Ed. O'Connell was a witness at the first trial and did not testify to these conversations. Whatever suspicion this fact might arouse as to the credibility of his testimony was for the trial court to resolve. There being nothing inherently improbable in the testimony we must assume in support of the judgment that the trial court believed it and with the trial court's determination of the weight and sufficiency of the evidence under settled principles we cannot interfere. We conclude that in view of this new testimony, the doctrine of the law of the case is not applicable and that the judgment finds support in the evidence.

Appellant attacks the quoted finding as too indefinite and self-contradictory in that it purportedly finds two different trusts, one for the benefit of Mary J. O'Connell and her children and the second for the benefit of the children alone. The finding is not a model of certainty but it is to be read in view of the evidence and is to be given a liberal construction to uphold rather than defeat the judgment. (*Hotaling* v. *Hotaling*, 193 Cal. 368, 385 [224 Pac. 455, 56 A. L. R. 734]; *Menghetti* v. *Dillon*, 10 Cal. (2d) 470 [75 Pac. (2d) 596]; 2 Cal. Jur., p. 871.) Reading it as a whole it is consistent with the quoted evidence, the money was to be received for the benefit of Mary J. O'Connell and her children and ultimately divided equally between the children. The finding reasonably bears such a construction.

Appellant also cites a finding that prior to and at the time of executing the assignment "Mary J. O'Connell was weak in mind and body, incapable of transacting any business" and argues that this finding is destructive of the finding that an express trust was created since one of the

elements of any contract is "parties capable of contracting." (Civil Code, sec. 1550.) A sufficient answer to this argument is found in the language of section 2222 of the Civil Code:

"Subject to the provisions of section eight hundred and fifty-two, a voluntary trust is created, as to the trustee, by any words or acts of his indicating, with reasonable certainty:

"1. His acceptance of the trust, or his acknowledgment, made upon sufficient consideration, of its existence; and,

"2. The subject, purpose and beneficiary of the trust."

█ Finally appellant urges that the action is barred by the statute of limitations. It would perhaps be a sufficient answer to this argument that the original complaint with its filing date was not included in the record on appeal. The only place in which a reference to the filing date is found is in an affidavit on motion for change of venue wherein it is alleged that the original complaint was filed on November 24, 1931.

But assuming that this sufficiently establishes the filing date to permit the point to be made on appeal there is an express finding supported by the evidence "that on or about the month of March, 1929, Anna Wulff first made demand upon defendant Daniel F. O'Connell for any money; and at said time said defendant Daniel F. O'Connell refused to give her any money."

In the case of an express voluntary trust it is settled that the statute of limitations only commences to run from the date when the trustee repudiates the trust.

"The only way in which the trustee of an express or voluntary trust can set the statute of limitations in operation in his favor with respect to it or its properties in his hands is by a distinct act of repudiation amounting to denial of its existence, and no mere tacit failure of the trustee to perform his duty in respect to such trust could or should be held to amount to a repudiation of it so as to set the statute of limitations in motion in his favor and as a result of his own neglect of duty." (*England* v. *Winslow,* 196 Cal. 260, 272 [237 Pac. 542].)

Such cases as *Rafferty* v. *Mitchell,* 4 Cal. App. (2d) 491 [41 Pac. (2d) 563], relied upon by appellant are distinguishable on the ground that they do not deal with express volun-

tary trusts, but with trust relations imposed by law because of the situation of the parties.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing was denied January 15, 1942, and appellant's petition for a hearing by the Supreme Court was denied February 11, 1942.