FRANCES IRENE WILSON
*Plaintiff and Respondent*

vs.

CASIA D. MARTINEZ and JOSEPHINE THOMPSON, Executrixes of the Estate of CATHERINE PHELAN, Deceased,
*Defendants and Appellants.*

(No. 2730; September 24th, 1956; 301 Pac. (2d) 785)

Heard before Blume, Chief Justice, Harnsberger, Justice, and McAvoy, District Judge.

For the defendants and appellants the cause was submitted upon the brief of Greenwood & Ferrall of

Cheyenne, Wyoming, James E. Barrett, Lusk, Wyoming, and A. R. McMicken, Rawlins, Wyoming and oral argument by Mr. Bard Ferrall.

For the plaintiff and respondent the cause was submitted upon the brief of Lathrop & Lathrop, and James A. Tilker all of Cheyenne, Wyoming, and oral argument by Mr. Carleton A. Lathrop.

## OPINION

HARNSBERGER, Justice.

Harry Phelan, father of the plaintiff, died on April 15, 1917, and his widow, Catherine, the plaintiff's mother, was appointed as administratrix of his estate. On May 18, 1920, the court entered its "Order of Final Settlement and Distribution", wherein the accounts of the administratrix were finally approved and settled, and a finding made that the estate of the deceased consisted of ninety-five shares of the capital stock of Continental Sheep Company, of the value of $230 per share. The order directed the administratrix to sell, at $230 per share, such number of these shares as would provide the money necessary to pay debts, fees and costs of the administration amounting to approximately

$9,500, and to pay the same. The court then decreed that the administratrix distribute to the guardian of Frances Irene Phelan, now Frances Irene Wilson, the plaintiff in this action, one-sixth of the estate of the deceased remaining after such payments.

It would have required the sale of 42 shares of the estate's stock at the price stipulated in the decree to raise sufficient money to pay the debts, fees and costs of administration, after which there would have been left in the hands of the administratrix only 53 shares of which the plaintiff's guardian would have been entitled to receive one-sixth or 8-5/6 shares.

At the time of the entry of the order, this plaintiff was of the age of 17 years, having been born on August 22, 1902, and thereafter becoming of full age on August 22, 1923. It is not shown that any guardian for the plaintiff was appointed either at the time of the entry of the order of distribution or at a later date.

The evidence indicates that the administratrix Catherine died about April 23, 1953, and two of her daughters the defendants Casia D. Martinez, a half-sister of the plaintiff, and Josephine Thompson, a sister of the plaintiff, became the executrixes of their mother's estate, letters testamentary being issued to them on September 16, 1953.

On December 17, 1953, plaintiff filed her creditor's claim against the estate of her mother, Catherine, setting forth as a basis for the same that the order of distribution entered in the matter of the estate of her father, Harry Phelan, deceased, ordered the administratrix to distribute 10 shares of Continental Sheep Company stock to the plaintiff; that she had never received the ten shares nor any dividends paid thereon; that her mother, the administratrix of her father's

estate, had collected $5,170 as dividends on plaintiff's stock and appropriated the same, and that in 1949 the administratrix sold the stock for $4,000 and appropriated the proceeds of the sale; that by reason of such appropriation of dividends, proceeds of sale and interest accruing thereon, the estate of her mother, Catherine, was indebted to the plaintiff in a total sum of $26,284.51. The claim was rejected by the executrixes and plaintiff brought this action to recover the amount set forth in her creditor's claim.

The first defense interposed by the executrixes was substantially a general denial. Further defenses included a plea of payment; a plea of the eight year statute of limitation of actions upon a contract not in writing, either express or implied ;a plea of the four year statute of limitation of actions for recovery of personal property or for taking the same and a plea of the ten year statute of limitation of actions for relief not otherwise provided for.

The case was tried to the court without a jury and judgment entered in favor of the plaintiff for $16,436.-70, plus $20.50 costs. It is from this judgment that the defendants appeal.

· The plaintiff seemingly sought recovery because, (1) her mother breached her trust as administratrix and converted the plaintiff's share of her father's estate to her own use, (2 )the assets of the father's estate or the proceeds thereof which were subject to the distribution made by the decree unto plaintiff, remain in the possession of her mother's executrixes, who are the defendants.

The statutes of limitation being pleaded in defense, and the plaintiff challenging the plea on the theory that the deceased administratrix as a trustee for the plaintiff could not invoke the bar of the statute, we should first say that we consider it settled that by

operation of law, personal representatives of deceased persons are trustees for all persons interested in the decedent's estate. The kind, extent and particular nature of such trust, and the effect of the trust relationship upon the right of the parties to this litigation particularly with respect to limitation statutes, will receive further attention in the discussion which follows.

The appellant advances a further contention. Over the appellant's objection, plaintiff was permitted to testify that she had never received from her mother the distributive share of her father's estate which had been decreed. However, on plaintiff's own motion made before judgment, this testimony was stricken. The appellant now says that with the deletion of this testimony, the record is absent of evidence showing plaintiff did not receive her distributive share and that proof of this fact was essential to enable plaintiff to recover.

We will first deal with the trust relationship and whether statutes of limitation are inapplicable in this case because of it.

As more than thirty years passed after the plaintiff reached here majority and before she brought this suit, if the statutes of limitation are applicable, the judgment in this case must be reversed.

There seems to be little, if any, practical difference between legacies and distributive shares, insofar as rights for their recovery are concerned, so it may be worthwhile in analyzing the matter to give consideration to the reasons which molded the law with respect to actions for recovery of legacies, in order that we may properly evaluate the persuasiveness of early holdings that neither statutes of limitation nor the doctrine of laches may be invoked to protect an executor in an

action by a legatee for recovery of a legacy, as they may bear upon the right of a distributee to recover an inheritance. Being in legal contemplation a trustee, the law presumed the possession of the executor to be the possession of the legatee,and because of this unity in the possession of the subject matter of the trust, no action at law between them for possession could lie. The parties were not adverse. It followed then, that until something occurred which rendered their positions adverse, such as a denial or repudiation by the executor of the trust relationship, the legatee was without such a right of action at law against the executor as would toll the statute of limitations. Annotion, 122 A.L.R. 286. Furthermore, a legatee was not permitted to sue the executor in a court of law unless the latter gave consent or assented to the action. This resulted in the legatee being frequently compelled to seek relief in equity where the exclusive character of its jurisdiction in such cases left inapplicable statutes of limitation which originally did not specifically apply to suits in equity. But as jurisdiction of claims for legacies and inheritances was extended to law courts, which were subject to the statutes placing limitations upon actions at law, the situation changed.

In order to understand why statutes of limitation have been considered inapplicable to protect personal representatives against belated claims by those claiming to be entitled to legacies or distributive shares, it seems well to make some examination of both texts and cases which have dealt with the subject.

Earlier texts indicated that limitation statutes did not apply although some intimated that after the lapse of 20 years the doctrine of laches would do so in proper cases.

For instance, in Angell on Limitations, 6th Ed., (1876) §§ 90, 93, pp. 91, 92, it is said:

"90. The plea of the statute of limitations to an ordinary action of a *legacy* has never been known; it has long been a settled principle that the statute does not apply in such a case; and it has been ever so understood in England, both in the common-law and ecclesiastical courts. Chancery has refused to adopt the rule by analogy to the statute, because an executor stands in the relation of a trustee, and *whilst the trust subsists*, the statute has not been permitted to run,

The same author does however say:

"93. By analogy to the statute of limitations, an artificial presumption has long been established, that where payment of a bond or other specialty was not demanded for *twenty years,* and there has been no circumstances to show that it was still acknowledged to be in existence, the jury are to presume payment at the end of twenty years. * * *"

Vol. 1, Wood on Limitations, 4th Ed. (1916), pp. 4, 133, 134, 298, says:

"The common law knew no such limitations; but courts of equity, refusing to enforce stale demands, presumed the payment of a bond or other specialty after twenty years, and courts of law adopted the same rule. Such presumption of payment did not depend upon statute, and differed in its effect from the statutory limitation, as it did not bar the action on the original contract, and any competent evidence which tended to show that the debt was unpaid was admissible for that purpose, and it might be overcome by evidence wholly insufficient as against the general statute of limitations."

This author further says, at pp. 133, 134:

" * * * There being no statutory provision as to legacies in this country, the law upon this subject here stands as it did in England prior to the adoption of the statute 3 and 4 Wm. IV.; there is no limitation against

a trust, as there was none under Stat. 21 James I., c. 16; and executors and administrators being express trustees, they cannot set up the statute against the claims of legatees or distributees. In an English case, Lord Nottingham held that a legacy was not barred by the statute, 'nor ever had been so.' * * * "

However, at pp. 297, 298, it is said:

"In the courts of equity in this country, full force and effect is given to the statute of limitations in equity as at law. It operates on equitable proceedings *suo vigore*, and not as a rule of comity, or as a measure of judicial discretion. But the statute is applicable in equity to the same extent as at law only where equity jurisdiction of a controversy is concurrent, and not exclusive. Statutes of limitation are never applicable to causes of action falling within the exclusive jurisdiction of courts of equity. Constructive trusts, arising from partnerships, agencies, etc., are subject to the statute of limitations; only a direct trust, belonging exclusively to the jurisdiction of equity, being exempt therefrom."

In 3 Woerner, The American Law of Administration (1923), 3rd Ed., § 569, pp. 1952, 1953, 1954, the following appears:

"The subject of the recovery of legacies and distributive shares is regulated in most States by their own statutes, prescribing simple and efficient, and in some instances very summary remedies, enforceable either in the probate courts or in courts of law or equity. The question of the executor's or administrator's liability is mostly determined by the Probate court, whose order of distribution or payment of legacies now takes the place of the executor's assent, and of the corresponding investiture of title in the distributee, and changes the character of the liability of executors and administrators from an *official* to a *personal* one, and the beneficial or inchoate title of the legatee or distributee becomes legal or absolute, enabling him to recover, by suit against debtors of the deceased in his own name, upon any cause of action assigned or distributed to him. Hence in these States it is generally held that the trust

relation of the executor or administrator ceases, and the Statute of Limitations for the recovery of a legacy or distributive share begins to run from the time of final settlement or order to pay legatee and distributees; and that thereafter the representative is subject to garnishment by a creditor of the legatee or distributee."

Twenty-seven states are listed (pp. 1953, 1954) by this author as having adopted such statutes, and to this number our state should be added, as § 6-2306, W.C.S., 1945, provides:

"In the order or decree, the court must name the persons and the proportions or parts to which each shall be entitled, and such persons may demand, sue for, and recover their respective shares from the executor or administrator, or any person having the same in possession."

Five additional states were also said to have given remedy by direct and summary process in probate courts.

In 2 Perry on Trusts and Trustees, 7th Ed., § 865, 865a, pp. 1477, 1480, it is said. "All trusts arising by operation of law, whether implied, resulting or constructive are subject to the statute." And further by stating, "In constructive trusts where as between the parties the holding of the trustee is clearly adverse and the equitable owner knew it or ought have known it from circumstances of which he had notice, the statute of limitations and the rule of *laches* apply. And the same is true where the trust does not arise out of any confidence reposed in the trustee or out of his fraudulent conduct", the author indirectly said that the statute will run and laches apply in favor of a personal representative because such trusteeship does not arise out of confidence reposed by the beneficiary, but only by operation of law.

In 1 Bogert, Trusts & Trustees, § 12, pp. 45, 46, 48, 49, it is stated that it is often said that executors and administrators are strict trustees. It is pointed out that usually neither executor nor administrator has title or general property in the realty of the estate by virtue of his appointment, nor are they ordinarily treated as trustees of such realty, and the author quotes approvingly from Chase Nat. Bank of New York v. Sayles, C.C.A. 1926, 11 F.2d 948, 953, 48 A.L.R. 207, where it was said: "Without stating the early conception of the law as to the relationship of an executor to creditors and legatees ,or wherein it differed from that of a strict trustee, we regard it now settled that it is substantially that of a trustee * * * ." The conclusion reached in the New York case was that now, with jurisdiction being given to probate, surrogate and law courts to enforce rights of creditors and legatees, the differences between executorships and trusts have been widened because trusts continue to be an institution enforced almost exclusively in chancery. So in a manner, Bogert seems to recognize that the effect of such a statute as § 6-2306 W.C.S., 1945, is to limit the character of the personal representative as a trustee and to provide for a termination of the trust coincident with there arising an action at law. But Bogert apparently takes the position that the early rule of equity courts "that the rights of legatees against executors would not be barred by the statute, unless there had been a disavowal of the duty to pay the legacy or a settlement", prevails in most American states, although he says the rule "was not founded on the idea that the legatee was a cestui, but on the view that it was inequitable to apply the statute." The author observes, "Perhaps, too, *the possible lack of notice* by the legatee of the existence of the legacy may have been of weight",

and thus Bogert gives some comfort to the respondent's postion. (Emphasis supplied.)

It might, however, be well to examine the three cases cited as the authority supporting the views last expressed. The first case, Wilmerding v. Russ, 1865, 33 Conn. 67, 76, makes this statement:

"But when he (the administrator) makes a final settlement of his administration account with the court of probate, then a cause of action does arise if there is any just ground of complaint against his account. He then openly attempts to discharge himself of his character of trustee, lays down the trust, and repudiates the idea if being any longer administrator in respect to the estate administered upon. If the statute does not then begin to run it never does or can, and there is no limit to the liability of executors and administrators."

The second case, Kent v. Dunham, 1871, 106 Mass. 586, 591, flatly says:

"The statute of limitations is no defence. So long as the executors hold the fund, they hold it for the benefit of those who are entitled to it *according to the terms of the trust declared by the will.*" (Emphasis supplied)

No explanation or authorities are cited, but the italicized words disclose that the trust in that case was one created by will and not by operation of law.

The third case, In re Moores' Appeal, 1891, 84 Mich. 474, 488 N.W. 39, says that by the terms of the will it was evident that the estate was not to be closed within a six year year period, during which period the legacies were to be paid. This would have left bringing of the action well within the limitation period. Furthermore the administrator had been guilty of wrong against the estate and had mismanaged it so that the court said that the lapse of time was excused. These

cases do not seem to give much support to the author's conclusion.

In 33 C.J.S. § 142, pp. 1101, 1102, 1103, it is stated, "The executor or administrator, occupying such position of trust in connection with the estate, is a trustee in the broadest sense, although not in the general acceptation of the term, the trusteeship existing only with respect to the property or assets which come into his custody or control under color of his office." Citing Los Angeles County v. Morrison, 15 Cal.2d 368, 101 P.2d 470, 471, 129 A.L.R. 443, 445. 2Bancroft's Probate Practice, 2d Ed., § 339, p. 291, however says, "It is repeatedly declared that an executor or administrator of the estate of a decedent is primarily a trustee; that he is a trustee in the fullest sense of the word, and nothing but a trustee." In 21 Am.Jur. § 4, p. 370, it is stated, "Strictly speaking, the position merely resembles an office, and is a trust. The rule seems to be generally acquiesced in that executors as well as administrators are trustees, that funds of the estate in their hands are trust funds, and that they may be held to the responsibilities and duties of trustees." It is not necessary to disagree with either of these authorities in order to accept it as settled that a trust relationship exists between personal representatives and persons interested in a decedent's estate insofar as faithful performance of duties of administration are concerned, and which in the very nature of those duties require temporary taking of title, possession, custody and control of personalty belonging to the estate. But such temporary title, possession, custody and control and all proceedings incident thereto, remain under the direction and subject to the orders of the court in probate. Any title, right of possession, custody or control acquired in the capacity of personal representative of the deceased, is subject to divestment

by proper orders or decrees of the court. It is doubtful if it would be claimed that such a trusteeship would survive so as to preclude the running of statutes of limitation, if, by order of court, the personal representative was properly removed and stripped of his office as such and thirty years later an action was brought to recover from him the personal property of the estate remaining in his hands. Neither should the bar of such statutes be denied where by decree of distribution the representative is divested of whatever title, right of possession, custody or control he had previously obtained in trust for all persons interested in the estate solely by reason of his being such an executor or administrator.

After stating that "the preponderance of authority supports the view that a statute of limitations, whether general or special, does not run in favor of an executor or administrator with respect to claims for legacies or distributive shares, for the reason that the relation of the personal representatives and the legatee or distributee is that of trustee and cestui que trust, in a direct and continuing trust and therefore the personal representative's possession cannot be adverse so long as this relation exists;" 34 C.J.S. § 733(a), p. 756, says:

"To put the statute in operation, there must be a final settlement or at least a disavowel of the trust. It is usually held that, on final settlement by an executor or administrator, the statute of limitations commences to run in his favor against claims of legatees and distributees, although this has been denied; and it has been held that the statute does not begin to run in favor of a personal representative against the distributees until an order of a court having jurisdiction directing a delivery of the estate to the distributees."

34 C.J.S. § 736, pp. 759, 760, says additionally:

"While, as shown supra § 733a, statutes of limitations are ordinarily inoperative to bar a claim for a legacy or distributive share, and while considerable indulgence is shown in favor of suits to enforce the payment of legacies and distributive shares of a decedent's estate, a legatee or distributee may lose his right to enforce payment against the personal representative by his laches in failing to assert his rights for such period of time as raises a presumption of satisfaction or payment. Interference in behalf of those who sleep on their rights, or who procrastinate them until evidence has passed away is reluctantly awarded, even where there is no statutory bar. * * * A lapse of twenty years or over from the time the legacy or distributive share becomes payable raises a presumption of payment or satisfaction and unless rebutted bars the claim."

Also in 54 C.J.S. § 179, pp. 151, 152, it is said:

"Moreover it is not every case of direct and express trust arising between trustee and cestui que trust that is exempt from the operation of the statute. The only class of trusts not affected by the statute is composed of those technical and continuing trusts which are not cognizable at law, but which fall within the proper, peculiar, and exclusive jurisdiction of courts of equity. Therefore, whenever there is an adequate, concurrent remedy at law, the statute will apply although relief is sought in equity; and the statute will run from the time the cause of action first accrues."

From Annotation, 122 A.L.R. 286, 287, 288, we understand that as early as 1719 in Lockey v. Lockey, Prec. inCh. 518, 24 Eng. Reprint, 232 Lord Chancellor Macclesfield held the statute of limitations barred a bill in equity for an accounting from one who had received profits from an infant's estate, brought thirteen years after the complainant reached majority. Lord Macclesfield reasoned that as the infant might have had an action at law for an accounting, the trust was not such as should bar the running of the statute.

He explained that the only reason the action was brought in equity was because it facilitated the taking of the account through the aid of discovery and the party's oath. This early recognition that where there is also available to a claimant, an action at law as well as a suit in equity, the fact that the remedy was sought in equity would not prevent the operation of the statute. The annotation, however, credits Chancellor Kent with crystalizing this doctrine respecting the running of statutes of limitation in favor of a trustee in certain instances when in Kane v. Bloodgood, 1823, 7 Johns, Ch. 90, (N.Y.) 11 Am.Dec. 417, 421, 422, 431, 433, he wrote "I cannot assent to the proposition that all cases of direct and express trust, and arising between trustee and cestui que trust, are to be withdrawn from the operation of the statute of limitation, notwithstanding a clear and certain remedy exists at law. The word trust is often used in a very broad and comprehensive sense. Every deposit is a direct trust. Every person who receives money to be paid to another, or to be applied to a particular purpose to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity, as a trustee, for a breach of trust. * * * Are all such cases to be taken out of the statute of limitations under the notion of a trust, when one of the parties selects his remedy in this court? A review of the decisions will enable us, as I apprehend, to deduce from them a safer and sounder doctrine; and to establish upon the solid foundations of authority and policy, this rule, *that the trusts intended by the courts of equity, not to be reached or affected by the statute of limitations, are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar and exclusive jurisdiction of this court.*" (Emphasis supplied.)

Writing further, Chancellor Kent also stated: "It is as to those 'trusts for which there was no remedy but in courts of equity' that the statute does not operate." With reference to a former somewhat broad statement made by him in Decouche v. Savetier, 3 Johns. Ch. 216, 217, 8 Am.Dec. 478, "that no time bars a direct trust, as between trustee and *cestui que trust,* so long as the trust subsist," the learned jurist acknowledged that he had not laid sufficient stress upon the fact that by statute law in New York, actions at law "may be brought for legacies and distributive shares" and he said : "As we, however, have a legal remedy provided by action at law, it becomes a very serious question whether this court (the equity court) possessing now only a concurrent jurisdiction, is not bound upon established principles to apply the same limitation to the equitable, which is given to the legal remedy." The ultimate conclusion of the Chancellor, although somewhat negatively voiced, seemed to be that where by statute a remedy at law is provided, statutes of limitation would be a bar to an action against a trustee where the action was brought in a court of law or a court of equity. In any event, that view has now seemed to have gained very general acceptance as is evidenced by the decisions of the courts of many jurisdictions, among which are the following.

In 1827 the Supreme Court of North Carolina in Nathan Ivy ,and Polly his wife v. Aaron Rogers adm'r of Sarah Rogers, 1 Dev. Eq. 58, 16 N.C. 58, 59, 60, a suit in equity to recover a distributive share of an estate, the defendant administrator had settled his administration accounts in 1802. In 1823 a bill in equity was filed. The court said the settling of the administration accounts enabled "all the parties concerned in interest, to ascertain the sum acknowledged to be respectively due them, to enforce the payment, if

they were * * * dissatisfied." It was also noted that although the case was "purely of equitable jurisdiction, not subject to any legal bar by force of the statute of limitations, yet this Court has from an early period adopted rules as to barring an equity, drawn as nearly as possible from analogy to the rules of law." More importantly, with respect to the claim that lapse of time should not bar the recovery because the defendant was a trustee, the court said "I deem it unnecessary to examine the doctrine relative to express and implied trust, because the settlement of account by the administrator presents a clear ground of decision, whatever the Defendant's original character may have been. From that time the trust ceased to be open, and the Defendant stood in a new relation to the Complainant as his debtor. Could the Complainant have sued at law, his cause of action would there have accrued, and the statute would have begun to run from that time. Certainly then, the Defendant may rely upon the lapse of time in this Court."

In App. v. Dreisbach, Pa. 1830, 2 Rawle 287, 21 Am.Dec. 447, 452, a suit against executors to recover distribution of a portion of a balance with which the executors were alleged to be charged and which was defended by plea of limitation, the case of Kane v. Bloodgood, supra, together with the authorities considered therein and which evidently influenced Chancellor Kent's conclusions, were reviewed with approval, the court further stating:

"An executor, or administrator, is a trustee for creditors and for next of kin, or legatees; but when he has filed and settled his account, if there is a balance in his hands, perhaps he ceases to be a trustee, and becomes a debtor for that balance from the time of the settlement. * * * It is not, then, one of those trusts which would last forever."

In other words, the trusteeship of an executor or an administrator may not be said to be a continuing trust.

Another Pennsylvania case, Patterson v. Nichol, 1937, 6 Watts 379, 31 Am.Dec. 473, recalled that originally the English common law courts did not take cognizance of personal estates of either testate or intestate decedents which remained in the hands of executors or administrators after payment of debts and expenses of administration, but that such remaining personal assets were left under the direction of ecclesiastical courts; that later on chancery entertained jurisdiction of such estates upon the ground that executors were the trustees for the legatees and administrators were trustees for the next of kin entitled to distribution and says that at common law statutes of limitation did not apply to actions for the recovery of legacies. The decision seems to hold that a statute of limitation is not a bar to the recovery of a distributive share of personal estate to which a person is entitled under intestate law. However, the writer says the statute of limitations may protect a trustee against claims growing out of the trust and not secured by deed or covenant under seal where the trust relationship has been dissolved and a right of action at law has accrued, and then concedes that if plaintiffs had made request or demand from the administrators and tendered a sufficient bond, which, under Pennsylvania law, was required as a condition to receiving a legacy or distributive share, the statute would have been a bar. This leaves some doubt if the court was holding the statute not to be a bar or merely held the failure to give bond defeated the action. The case was followed in DeHaven's Estate, 33 Berks County Law Journal 81, on the assumption it had held the statute of limitations was inoperative. It might also be ob-

served that as no mention of App. v. Dreisbach, supra, was made, it might be assumed the court did not have that case in mind.

Perkins v. Cartmell, Del. 1845, 4 Har. 270, 42 Am. Dec. 753, was an equitable action which had been brought in the lower court by heirs of a deceased who died in 1841, to recover the legacy bequeathed to their ancestor by the will of the ancestor's father who had died in 1804. At the time of the father's death the heir's ancestor-legatee was under disability of coverture, which continued until 1838 when her husband died. As 35 years had passed before any action was taken to obtain the legacy, the defendant had relied in part upon lapse of time as a defense. On appeal, the heirs tried to uphold their favorable decree on the theory that as a court of equity acts in analogy to the statutes of limitation, it, therefore, also adopts execptions in such statutes which are favorable to persons laboring under disability. They contended this would, in the circumstances of the case, have preserved to them a right of action for recovery of the legacy, because only three years had elapsed between the commencement of the action and the removal of the legatee's disability of coverture, so as to be well within the ten year general statute of limitation. This contention was rejected by the Court of Errors and Appeal on the reasoning that a legacy was not barred by any statute of limitations prior to 3 and 4 Wm. IV, so no such statute existed which could be adopted or followed by analogy. However, the chancellor pointed out that a statutory right of action in assumpsit had been given to recover legacies, and said that a three year limitation placed upon the bringing of such action would seem to be reasonable to adopt to bar recovery.

In 1885 in Melone v. Davis, 67 Cal. 279, 7 P. 703, 704, when it was sought to recover from an administrator

the distributive share decreed in probate, it was said: "By refusing to comply with the decree he became personally liable to plaintiff, as in case of *devastavit*." So also should it be said if the administrator unduly neglects to comply with the decree and an action is brought to recover from him personally, that which was decreed to the legatee, the suit is not an action by a cestui que trust against a trustee but is at least analogous to an action brought by a creditor against a debtor. Ex parte Smith, 1878, 53 Cal. 204, seems to be somewhat at odds with such a conclusion because it holds that the amount of money which the order of distribution required the executors to pay over to the distributees was not a debt due from the executor to the distributees, and that the executors held the estate property in trust for creditors, heirs and others interested in the estate. Similarly, In re Kennedy's Estate, 1900, 129 Cal. 384, 62 P. 64, 65, the California Supreme Court said a decree of distribution was not a judgment or order directing the payment of money or directing the assignment or delivery of documents or personal property, and said: "The court discharges him from his trust upon proof that it has been fully performed, and payment to the heirs happens to be the last duty in the order of time to be performed." This seems to accept the theory that the trust relationship between executors or administrators and legatees or heirs continues until the actual receipt of the legacy by the legatee or the receipt of the distributive share by the distributee.

James P. Biays, administrator of Jane C. Biays v. Joseph K. Roberts, administrator c.t.a. of John . T. Magruder, 1888, 68 Md. 510, 13 A. 366, 368, was a case with facts quite similar to those present here, where an intestate left as his heirs at law, four children, one of whom served as administrator, rendering

a final account which was passed and approved. This administrator died without making distribution of the assets shown by his final account and he left a will which gave all of his property to his wife. An heir of one of the distributees of the estate of the first deceased brought a bill in equity in behalf of himself and of others, who claimed under similar distributees in which it was sought to have the personal estate of the first deceased administered in a court of equity in order to secure the rights of distributees, and to have the personal estate of the deceased administrator declared to be held in trust by his administrator c.t.a. for the use and benefit of the distributees of the estate of the first deceased. The court considered the bill to be an effort by the distributee to collect from the estate of the deceased administrator a distributive share of the sum which had been shown to be due from the deceased administrator of the estate of the first deceased. It was held that the passing of the final account was a complete settlement of the first administration and that the parties entitled to distribution thereunder could have at once demanded the same and brought action at law against the administrator to recover their respective shares.

In answer to the distributee's claim that the statute of limitations would not run in favor of the administrator in such case because a trust relation existed between the administrator and a distributee which prevented the operation of the statute in a suit in equity by the latter against the former, the court said:

"We are clearly of opinion. however, that after the estate has been settled by the passage of a final account, whatever may have been the case before, there is no such *express, subsisting,* and *continuing* trust as will relieve a court of equity from the duty of following and obeying the law by applying the statutory limitation of time * * *." (Emphasis supplied.)

In the Biays case, as in the case before us, it was also claimed that the distributee was not aware that her father, the first decedent, had left any considerable personal estate, and that the heir was therefore led to believe there would be nothing of consequence left for distribution when the estate would be settled, and therefore, she died in ignorance of the fact that she had any substantial interest in her father's personal estate. To this the court answered:

"* * * the mere fact that she was not aware that her father had left any considerable personal estate over and above his debts, and died in ignorance of the fact that she had any substantial interest therein, is wholly inadequate to prevent the operation of the statute."

In Alvis v. Oglesby, 1888, 87 Tenn. 172, 10 S.W. 313, another case quite similar to that at bar, the court explained its earlier holdings, that the statute of limitations would not run in favor of an administrator against a distributee or legatee, by pointing out that those decisions were rested upon the propositions that an administrator was a trustee; that trusts were cognizable alone in equity without there being any remedy at law; that statutes of limitation were applied to *forms* of action and not to the *cause* of action and because bills in equity not being expressly mentioned in statutes of limitation, they did not apply in equity proceedings. It was, however, held, with the enactment of the code which gave jurisdiction to courts of law in actions to recover legacies and distributive shares, that statutes of limitation became applicable because they then operated upon the *cause* of action rather than upon the *form* of action. This decision, although somewhat differently expressed, is in substantial accord with those cases which hold that statutes of limitation apply whenever concurrent jurisdiction exists at law and in equity.

In Hargis v. Sewell's Administrator, 1888, 87 Ky. 63, 67, 7 S.W. 557, 559, 9 Ky. Law Rep. 920, it was claimed that a fund, shown to be in the hands of an administrator by a settlement of accounts and therefore subject to distribution, was a trust fund and, for that reason, the statute of limitations was not available as a defense in an equitable action brought to secure distribution. After stating "Courts of equity in this State, prior to the adoption of the Revised Statutes, assumed the power, and properly, to apply the statute of limitations to cases of exclusively equitable cognizance, although the old statutes by their terms applied alone to actions at law; but now the statute of limitations applies to all actions, whether at law or in equity, and the chancellor can exercise no discretion on the subject, but must apply the statute when properly pleaded, although the jurisdiction over the subject-matter belongs exclusively to a court of equity", the court noted an exception with respect to a continuing and subsisting trust and in explanation said "The reason that the statute does not run in such a case is, that the *cestui que trust* has no right to sue the trustee and recover the trust fund." So in Kentucky we find that contrary to the law of other jurisdiction in force at about the same period, statutes of limitation were held to bar recovery of distributive shares, where courts of equity had exclusive jurisdiction of such an action, although the application of the bar seems to have been one of discretion with the chancellor rather than one of right with the administrator. At all events, the case aligns Kentucky with other jurisdictions which now hold that where concurrent or other right of action at law is given, the statute will operate as a bar, even though the action is brought in a court of equity where that separate form of action is retained.

The holding in Hargis v. Sewell's Administrator, supra, was followed in Robinson's Committee v. Elam's Ex'r., 1890, 90 Ky. 300, 14 S.W. 84, 12 Ky. Law Rep. 271.

In People v. Ochiltree, 1892, 48 Ill.App. 220, an action at law to recover a distributive share of monies alleged to have been collected but not reported in an account filed by the administrator some 16 years prior to the commencement of the action, the court held the administrator's failure to report such monies was such a repudiation of liability as would require the heirs to assert their adverse rights within the period prescribed by the statute of limitations, and that such repudiation started the running of the statute.

In Ganser v. Ganser, 1901, 83 Minn. 199, 86 N.W. 18, 85 Am.Rep. 461, an action to obtain a distributive share of the ancestor's estate, the court said the only question presented was as to when the cause of action accrued. The decision reversed former holdings that accrual occurred only when leave to sue was obtained and held that the right to sue accrued at the time of final decree of the probate court and, therefore, the statute of limitations commenced to run at that time. When the decision in this case was rendered, Minnesota had a statute quite similar to our § 6-2306, W.C.S. 1945.

A later case, Burns v. New Amsterdam Casualty Co., 1939, 205 Minn. 391, 285 N.W. 885, decided after a revision, omitting the portion of the statute granting distributees the right to bring action to recover their shares from executors or administrators, held that the omission in the revised law did not justify the court in departing from the rule established in Ganser v. Ganser, supra, and attention was called to Saunderson v. Haas, 1934, 190 Minn. 431, 252 N.W. 83, where the right of a distributee to recover his dis-

tributive share had been recognized. These holdings would seem to clearly indicate that in Minnesota the courts consider that a right of action to recover distributive shares accrues to the distributee from the time of making of the decree of final distribution, whether the statute so expressly declares or not.

In Gray v. Goddard, 1916, 90 Conn. 561, 569, 98 A. 126, 128, cited in 34 C.J.S. § 733, p. 756, a suit brought after the expiration of the limitation period by an undiscovered heir, to recover a portion of his inheritance from a distributee who had also been the administratrix of the estate, the court said: "Before the settlement of her administration account and while she was acting as administratrix she was a continuing trustee, when the statute of limitations could have no application, but *there must be some limit to the liability of administrators*. In the present case, when the defendant had duly settled her administration account *and carried out the order of distribution,* the statute of limitations began to run." (Emphasis supplied.) It is not difficult to understand why the court included the phrase "and carried out the order of distribution", because in that case the cause of action arose by virtue of the failure to include the heir who brought the suit among the distributees to whom distribution was decreed. It was therefore not an action by a distributee to recover a decreed distributive share decreed to him, but it was an action by one claiming the right to have been included as such a distributee. However, the true rule was voiced later in the opinion when it stated: "An administrator remains in the position of continuing trustee, *until the final settlement of his administration account,* but, after such settlement, the statute of limitations commences to run in his favor." (Emphasis supplied.) Settlement of his account in administration by the personal representative and dis-

charge of his liability to legatees and distributees are two entirely different matters. The one is concerned with the performance of a trust; the other is a matter of personal liability. The trust occurs by operation of law because of the necessity of having someone act in a strictly fiduciary capacity in order to bring about the payment and discharge of the estate's obligations, to have judicially established the nature and extent of assets belonging to the estate remaining after such payment and discharge of obligations and to have it judicially ascertained to whom the residuum of the estate is to be distributed and the quantum of legacies and distributive shares. When these services have been performed, the reason which gave rise to the trust no longer exists and the trust is therefore terminated.

In Langan Realty Co. v. Dixon, 1922, 46 S.D. 170, 191 N.W. 444, 445, the court makes the statement "There is a continuing duty on the part of the trustee to pay the legacy, and the statute of limitations does not commence to run until the final discharge of the executor or until he has assumed a position hostile to the legatee," citing 24 C.J. § 1972. See also 34 C.J.S. § 733.

The facts in that case hardly warranted such an unqualified statement as the legacy was to pay an annual sum during life of the legatee and the continuing trusteeship did not result from the administration of the estate but by virtue of the will. It was by the terms of the will itself that it was made necessary to have a trustee to carry out its provisions inasmuch as the legacy might extend over a long period of time and far beyond the closing of the probate proceedings. The case is distinguishable from cases where there is no reason why full settlement of the legacy may not be made without delay and immediately following the

final order of distribution. The trusteeship involved was not a trust occurring by reason of the office held as an executor but was a trust made necessary by the nature of the legacy under the provisions of the will.

In Packer v. Overton, 1925, 200 Iowa 620, 203 N.W. 307, under the terms of the testator's will, a life estate in trust was given his spouse with remainder over to other legatees. It was held that upon the death of the life tenant the statute of limitations commenced to run against the remainderman.

Jackson v. Dobbs, 1926, 154 Tenn. 602, 611, 290 S.W. 402, 405, was a suit by a son brought some seven years after reaching his majority to recover from his mother his distributive share of a fund which she received by compromise for the wrongful death of her husband, his father. The court approvingly quoted Alvis v. Oglesby, supra, and held that "since the trust was not technical and continuing in character, but one enforcible at law" the statutes of limitation applied, and barred the claim.

In re Richardson's Estate, 1927, 130 Misc. Rep. 285, 224 N.Y.S. 299, 303, it was held that the right to recover legacies and distributive shares accrues when the representative's account is judicially settled, under a statute which provided for the bringing of such action.

In Miller v. Miller, 1931, 200 N.C. 458, 157 S.E. 604, the administrator of his deceased spouse's estate filed a final account in September 1916, and thereafter retained all of the assets of the estate which he later converted into other property. In July 1929, and after the death of this administrator, the heirs of the first deceased sued to recover their inheritance from the executor of the estate of the deceased administrator,

and the statute of limitations was pleaded in defense. The court said, when the administrator qualified, he became the trustee of an *express trust,* but when he converted the estate property, taking title in his own name, he disavowed the express trust and a resulting trust was created in favor of the children of the distributee's of the first deceased who were the heirs bringing the action. As ten years had passed since the rendition of the adminisrator's final account, it was said the statute of limitations would have barred the action, except for the fact that the running of the statute had been interrupted by absence of the administrator from the jurisdiction.

As much of our probate law has been taken from California, the decisions of the courts of that state are very persuasive when applying statutes which are identical or very similar to those enacted by our own legislature as is true with respect to § 6-2306, W.C.S. 1945.

In Rafferty v. Mitchell, 1935, 4 Cal.App. 2d 491, 41 P.2d 563, 564, the District Court of Appeals held an action to recover a legacy brought more than nine years after decree of final distribution was barred by limitations since the right to maintain the action accrued when the decree was made. The court quoted, in part, and with evident approval a statement made in St. Mary's Hospital v. Perry, 152 Cal. 338, 340, 92 P. 864, 865, that " 'Such an action against an executor or administrator is one against him individually, and not against him in his representative capacity. It is not an action against the estate.' " It is also worth noting that the St. Mary's Hospital case continued "As against the estate, the rights of the distributee are fully adjudicated by the decree of distribution * * *. There being no claim to the contrary asserted in the briefs, we assume this may properly be held to be such an action

against an executrix in her individual capacity, for refusal to pay over moneys which, under the decree, it was her duty as executrix to pay, and that the words 'as executrix," etc., in the title of the action should be held to be merely descriptive."

The Rafferty decision was cited and followed in Elkins v. Bryson, 1936, 16 Cal.App.2d 173, 60 P.2d 301; Aronson v. Bank of America N.T.&S.A., 9 Cal.2d 640, 72 P.2d 548; Id., Cal.App., 65 P.2d 823, and Id., 42 Cal.App. 2d 710, 109 P.2d 1001.

When the court in Chard v. O'Connell, 1941, 48 Cal. App.2d 475, 120 P.2d 125, decided that in cases of an express or voluntary trust the only way a trustee could set in operation the statute of limitations in his favor was by a distinct act of repudiation of a trust, it also pointed out that such cases as Rafferty v. Mitchell, supra, were distinguishable because they did not deal with express voluntary trusts, but with those trust relationships which were imposed by law. This makes it clear that in California the trust resulting from the relationship of executor or administrator to the legatee or heir was not considered to be such an express voluntary trust as requires a trustee to repudiate the trust in order to start the running of the statute of limitation.

In State ex rel Fagan v. Grigsby, 1887, 92 Mo. 419, 426, 5 S.W. 39, it was said, "when the sole duty of the executor is to pay over to the residuary legatees the assets in his hands, and he fails to do so, the trust under which he theretofore held the assets of the estate may be regarded as discontinued, his further holding being inconsistent with the rights of the benficiaries of that trust, and their right of action at law, upon the bond, for his breach of duty, is complete." This decision gives answer to the theory that the cestui que

trust may not sue the trustee for the subject matter of the trust became the possession of the trustee is the possession of the beneficiary and the parties do not stand in adverse position.

However, in Manry v. Manry, 1943, 196 Ga. 365, 369, 26 S.E.2d 706, the opposite position is taken, the court saying, "So long as the executors held the title and possession of the estate, *as such,* it was a continuing executory trust, and the bar of the statute of limitations does not run against such a trust until its termination or repudiation." (Emphasis supplied) It may be that the use of the words "as such" import some acknowledgment that there could be a continuation of possession after termination of the trust without there being any express repudiation of the trust, as for instance, where the trustee retains possession after doing all things that were to be done in fulfillment of the trust. This would be the case where final account had been rendered and approved, leaving nothing to be done except turning over to cestui que trust the benefits to which they were entitled.

In re Statz' Estate, 1944, 144 Neb. 154, 12 N.W.2d 829, it was said that the trust of an executor or administrator is a continuing one and the statute cannot be set up in defense against a person entitled to distribution, unless the trust is repudiated or terminated. However, this action was not one to recover a legacy or a distributive share, but was one to require an accounting and to surcharge the estate of a deceased executor for funds belonging to the first deceased's estate which the executor had improperly loaned upon a security which had become greatly depreciated in value. The case fails to discuss or deal directly with the crucial question before us, which is, Does the trust relationship between the personal representative of a

deceased and a legatee or distributee, terminate when final accounts are settled and distribution decreed, or does such trust continue until the actual payment or delivery of the legacy or distribution by payment or delivery of the inheritance is made?

A case which seems beyond reconciliation with other authorities is Bailey v. Sayle, 1949, 206 Miss. 757, 40 So.2d 618, 621. This was a suit to recover a legacy brought against the executor and holds the statute of limitations could not be pleaded in bar, as the statute would not begin to run until the trust was ended by final discharge of the personal representative. The court, however, approvingly referred to its earlier agreement with Pomeroy (1 Pomeroy's Equitable Remedies, § 21) which accepted the language used in Chase v. Chase, 20 R.I. 202, 37 A. 804, to the effect that the doctrine of laches might be applied where "The disadvantage may come from loss of evidence * * *' ", etc.

And Jones v. Haines, 1911, 79 N.J.Eq. 110, 112, 80 A. 943, 944, says that the rule announced by Chancellor Kent "has been expressly repudiated in this state", citing Hedges v. Norris, 32 N.J.Eq. 192.

In studying the foregoing as well as a great number of other cases from different jurisdictions, some of which have been cited by counsel and some of which have been discovered through our own research, it appears that in those jurisdictions which have statutes similar to our § 6-2306 W.C.S. 1945, giving distributees a right of action at law for recovery of their shares of an estate, it is being held that statutes of limitation may be pleaded in bar to actions brought by legatees or distributees against personal representatives to recover their distributive shares of an estate. There have been a variety of names given to describe the trust under which a personal representative

functions. It is sometimes called an express trust, an implied trust, a strict trust, a resulting trust, a continuing trust, a technical trust, a constructive trust, a voluntary trust, an involuntary trust, etc. Of such looseness of expression it is said in the annotations appearing in 122 A.L.R. 286, 287, that even in those states, of which ours is one, where every cause of action, whatever its nature, is today subject to be outlawed by the running of one statutory period or another, the distinction sought to be made between express, technical and continuing trusts which were not cognizable at law and were within the exclusive jurisdiction of courts of chancery, and "express trusts" which are cognizable at law and against which statutes of limitation run, do not readily *lend themselves to definitive treatment.*

Whether or not the trust under discussion is an express trust, it is not enough to say that it continues until repudiated for there are express trusts which provide for their own termination and other trusts which are not of a continuing character or those where the beneficiary becomes entitled to the legal right of possession. It is only the technical trust and the express continuing trust which remains exempt from the bar of statutes of limitation and which must be repudiated or otherwise terminated before the statute begins to run. Express trusts, trusts occurring by operation of law, constructive trusts, implied trusts, resulting trusts, etc., are not classifications which sufficiently serve to distinguish between those trusts which must be ended by the trustee's repudiation and those trusts which may be otherwise terminated, as, for instance, by the occurrence of some other subsequent condition or event. One of the latter type of trust is that of an executor or administrator whose trust may be terminated by the representative's accounting and the

court making its order or decree settling and approving the same and decreeing distribution of the assets of the estate remaining in the hands of the representative at which time the right of possession in the beneficiary becomes absolute. See 34 Am.Jur. § 176, pp. 141, 142.

Despite the confusions which were bound to result from such indiscriminate descriptions being applied to trusts, there has emerged in most instances something akin to agreement in this — that statutes of limitation will run against the claimant of a legacy or distributive share when (1) the representative either expressly or impliedly repudiates the trust; (2) the trusteeship is otherwise terminated. It is as to the occurrence of the second of these circumstances that conflict is found. Persuasive modern authority — both texts and courts — seem to favor the view that termination of the trust relationship is coincident with settlement of the representative's final account and the making of the decree of final distribuion. This is particularly true in the presence of statutes such as § 6-2306, W.C.S. 1945, because such statutes give a right of action at law for the recovery of legacies and distributive shares upon the making of the decree of distribution, whereas at common law, such relief could only be sought — originally in ecclesiastical courts and latterly in courts of equity. See I Bogert, Trusts & Trustees, § 12, p. 46. These laws together with statutes such as § 3-301, W.C.S. 1945, which abolishes "The distinction between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing," and substitutes a single form of action called a "civil action", so completely destroy the reasons which originally were held to prevent statutes of limitations from being invoked to bar actions against personal representatives that the rule itself must not be

held to be abandoned. A minority, however, seem to take the position that the trusteeship endures until actual payment or delivery of the legacy or distributive share has taken place and the representative has been discharged.

The crux of the matter then, is at what time, if ever, will personal representatives become personally liable in an action at law which is brought to recover a legacy or distributive share?

Stated thus, the answer becomes clear. If the trust relationship is to continue until payment or delivery of the legacy or distributive share is actually completed such a cause of action against the representative will never arise — except, of course, in cases of repudiation of the trust by the trustee. If this is true, then that portion of § 6-2306, W.C.S. 1945, which gives a right of action when the decree of distribution is made, becomes meaningless and futile and accomplishes nothing. Both courts and text writers have in most instances been quite careful to say, in one way or another, that the trust continues until there is either an express or implied repudiation of the trust by the trustee or *until the trust is terminated.* Unfortunately in too few cases has the question of how and in what ways the trust may be terminated been discussed. When our statute gave a right of action upon the making of a decree of distribution, it as definitely made the decree the turning point in the administration of the estate where the trust relationship theretofore existing between the personal representative and those entitled to receive legacy or distributive share terminated, and the time when the personal obligation of a representative to the entitled person began. Before the decree is made the functions and duties of the executor or administrator are many and varied, and the trustee-

ship is general in its obligation and responsibility to all persons having or claiming any interest in the estate, and the measure and extent of this obligation and responsibility to any particular person or interest is neither ascertained nor fixed. But when the decree of distribution is made, the interest of all persons has been determined and adjudicated and the single remaining duty of the personal representative is the mere compliance with that decree. No further trust functioning or service in behalf of creditors, legatees, the distributees, the estate itself, or of any other interested person is required of the administrator.

The nature and extent of the properties and interest of the estate therein were ascertained as they were taken into the representative's possession and were inventoried and appraised as assets of the estate. These assets were applied to the payment and discharge of the debts of the estate and the charges against its administration. During the period when the personal representative was transacting this business for the estate, it was necessary that possession and control of it assets and even the title to the personality be and temporarily remain in him. Because of the confidential and intimate relationship involved in thus literally stepping into the shoes of the deceased in order to finally wind up his worldly financial affairs and the even closer fiduciary relationship assumed with respect to those who are thus compelled to depend upon the faithful performance of those duties in order that it will justly be determined who are to be ultimately entitled to share in what remains for distribution and in what portions, the law makes the representative a trustee. This is a fitting capacity for one who is to take title, have possession, custody and control of properties of others and who are to act in behalf of persons yet unknown and whose interests are still to

be determined. It is not until such services have been faithfully and scrupulously performed that the persons entitled, the amounts, the extent and the nature of distributive shares can be ascertained, and even legacies, until then, remain uncertain. However, when final account is rendered, ,settled and approved, and the court determines the identity of those who are entitled, and decrees the payment, transfer or delivery to them of their share of the estate's remaining assets, the *purposes* of the representative's trusteeship have been accomplished. With the entry of the decree of final settltment and distribution, the last step necessary to fulfill the duties which rendered the necessary trust, has been taken. Nothing of the assets of the estate need remain in the representative's hands. So far as the estate of the deceased is concerned, it is then devoid of property or assets, because that which had previously been its assets, has then become the property of legatees and distributees. The trust which was undertaken by the personal representative, i.e., to collect, preserve, and apply the assets of the estate to the payment and discharge of the debts of the deceased, the cost of administration and to account to the court for what remains, has been fulfilled, and that business of administration has been finished.

In the matter of the administration of the estate, the sole and only thing remaining to be done is for the representative to exonerate himself before the court by exhibiting satisfactory proof of compliance with the court's order. True it is, that until this is done the probate court's jurisdiction over the representative continues and disciplinary contempts may be invoked to enforce the court's authority. True it is, that liabilities continue upon the bonds given by the representative to insure faithful performance of duty and compliance with orders of the court. And, it is also true, that the

administrator may be removed and distribution be made by another in compliance with the decree. Nor is a physical or other delivery of the legacy or distributive share always necessary. For instance, in the case of real property, the legal title first vesting in the heirs subject to defeasance by devise or sale and properly possessed during administration, required no act of the representative other than placing the decree of distribution of record. See I Bogert, Trusts & Trustees, § 12, p. 46. Also, perhaps, in a case where the decree provides an assignment of interest to the legatee or distributee, and the title to the interest is not evidenced solely by documents in the hands of the representative. So it is, that entirely independent of the act of the representative, some legatees and distributees may come into or be secured in the title and possession of that which they are decreed to receive. These illustrations are suggested merely to illustrate that, in many circumstances, after there has been a decree of distribution, the personal representative becomes unnecessary to carry into effect the provisions of the decree. Much less so, would a trustee be needed in any such case.

With respect to the testimony of the plaintiff that she had not received her distributive share of her father's estate, even though the testimony was stricken and consequently will not be taken to have influenced the court's decision, it might be well to give our views as to its competency. § 3-2603, W.C.S., 1945, states plainly that "A party shall not testify where the adverse party is * * * an executor * * * of a deceased person." We believe the test set forth in 70 C.J. § 275, pp. 209, 210, should be applied under this statute, to determine the competency of plaintiff's testimony, where it is said "three elements must concur in order to exclude testimony: (1) The witness must belong to

a class which the statute renders incompetent; (2) the party against whom the testimony is offered must belong to a class protected by the statute; and (3) the testimony itself must be of a nature forbidden by the statute * * *". All three such elements are present in this case and neither of the exceptions set forth in the statute applied, except possibly as plaintiff's testimony might apply to her non-receipt of the distributive share during the period commencing with her mother's death and the date when she testified. Her testimony not being so limited, it was clearly inadmissible because rendered incompetent by our statute, as it involved a direct conflict of interest between the living and the dead and, if believed, might have resulted in decreasing the mother's estate. 70 C.J. § 279, pp. 217, 218.

Whether or not the plaintiff knew of her inheritance was a question of fact. The judgment favorable to plaintiff requires that we consider it settled that she did not actually have that knowledge. This, however, did not relieve the plaintiff of a duty to act. The law charged plaintiff with knowledge of matters disclosed by public records. When plaintiff became of age the law presumes her capacity to know whether she had received any benefit from her deceased father's estate. It then became her own responsibility to ascertain whether she was entitled to receive any inheritance or legacy from his estate and, with the public records evidencing that fact available to her, she was charged in law with that knowledge. See Lyerly v. Yeadon, 1937, 180 S.C. 256, 190 S.E. 737.

There must be an end to litigation and disputes and it is just as important that there come a time when unasserted rights must be held to be forever lost. The more complex and involved our civilization and ways of

life become, the more necessary it is that the business and affairs of people be allowed to proceed without a sword of Damocles hanging interminably over their heads in the form of possible unannounced claims, long delayed in their assertion and which, if timely prosecuted, might have been defeated upon merit.

The equities between the parties in matters of this kind are so closely balanced that to rest decision upon what may be conceived to be the greater weight of the one over the other, would require a speculation which should always be avoided where, as in this case, the answer may be found through adherence to established legal principles, yet giving recognition of the effect of changes wrought by new and changed conditions including those changes occurring as a result of legislative enactment.

On the one hand justice requires that the rights of minors be protected and preserved to them, and to this end statutes of limitations, as well as other limitations, are seldom permitted to run against them until the minor has reached the age of majority and, in some instances, even an additional grace period is allowed. When it is remembered that a right may inure to the benefit of an infant, even possibly to an infant yet unborn at the time the right accrues, it is easy to understand that in some cases it is highly improbable that knowledge will in fact come to the child during its non-age. In such a case it also may be that even after reaching adulthood, the right will remain unknown and undiscovered, and may remain unknown to the individual forever. In cases herein cited this may have actually been the case, for we find heirs of the person to whom the right was given, bringing suits for its recovery. Thus it appears that some injustice may be done in some instances where the right is not prosecut-

ed within the period of limitation following the age of majority being reached.

But, on the other hand, justice also requires that some protection be given to the person or interest against whom such a right is claimed. The person may die, witnesses may die or pass beyond reach, documents and effects be destroyed or lost and, in consequence, with the passing of time, the persons and the evidence which were once available to make defense against stale claims are lost and gone forever. See Sherman v. Sipper, 1941, 137 Tex. 85, 152 S.W.2d. 319, 137 A.L.R. 263.

Where, as in the case before us, the relationship between the person claiming the right and the one against whose estate the right is being prosecuted, was so close, not merely because they were mother and daughter, but also because the record discloses that before and at the time of her death the mother was living with and in the home of the daughter with every evidence of there being a close, warm filial affinity between them, then to have the daughter wait over thirty years and until after her mother's death to bring forth a claim that the mother had denied her the inheritance to which the decree of distribution in her father's estate entitled her, emphasizes the possibility that if the mother were here to speak for herself or produce that which would be a complete defense to her daughter's action, this suit would have been defeated on its merits.

Because of what has been above recounted, it is our opinion that the statutes of limitation of this state were a complete bar to the plaintiff's action brought more than thirty years after her statutory right of action accrued against her mother Catherine, the former administratrix of her father Harry Phelan's

estate; that the plaintiff was also guilty of laches in bringing her suit as no sufficient reason was shown to excuse her long delay and, under such circumstances, there is a strong presumption that the deceased administratrix had discharged her obligation to distribute to the plaintiff the share of Harry Phelan's estate to which plaintiff's guardian became entitled under the decree of distribution. The judgment in this case must be reversed and judgment for the defendants entered.

Reversed.

BLUME, C. J. and McAVOY, D.J. concur.

## ON PETITION FOR REHEARING

(No. 2730; February 19th, 1957; 307 Pac. (2d) 605)

Heard before Blume, Chief Justice, Harnsberger, Justice, and McAvoy, District Judge.

In support of the petition for rehearing, there was a brief for the plaintiff and respondent by Lathrop & Lathrop, and James A. Tilker, all of Cheyenne, Wyoming.

In opposition to the petition for rehearing, there was a brief for the defendants and appellants by Bard Ferrall of Cheyenne, Wyoming.

## OPINION

Mr. Justice Harnsberger delivered the opinion of the Court.

The respondent has asked for a rehearing following our reversal of the lower court's judgment in her favor. She asserts she would be inclined to forego this request if our decision had been based upon legal questions fully presented by the appellant's original brief and answer in respondent's original brief or if it had been orally argued. It is represented that as the effect of § 6-2306, W.C.S. 1945, upon appellant's plea of the statutes of limitation had not been discussed either in brief or argumment, all petitioner sought was an opportunity to present her views with respect to the

interpretation of that provision of our law, but the hope is evident that this would persuade us to reconsider our decision.

We could not accept petitioner's erroneous assumption that, by noticing this section of our statutes, we were giving consideration to an issue not presented and developed by the parties because it was our opinion that we had merely applied a relevant law of this state which we were bound to notice and which seemed to be conclusive of the case. Nevertheless, we permitted both parties to submit by brief an elaboration of their views on the subject. However, and notwithstanding repeated disclaimers of any purpose to reargue matters previously presented and decided adversely to the respondent, a major portion of the rehearing brief was devoted to that theme and of course has not been considered.

Counsel either misconceives or misunderstands what was intended to be conveyed in Wilson v. Martinez, Wyo., 301 P.2d 785, 801, when we said:

"When our statute gave a right of action upon the making of a decree of distribution, it as definitely made the decree the turning point in the administration of the estate where the trust relationship theretofore existing between the personal representative and those entitled to receive legacy or distributive share terminated, and the time when the personal obligation of a representative to the entitled person began.

We believe this statement fairly well served to make plain that we felt the position of the representative became adversary to those entitled to receive distribution as of the time the decree was made, because a right of action was given for the recovery of that which was decreed. We left unsaid whether that constituted the respresentative a simple debtor or whether it destroyed all aspects of fiduciary relationship—an as-

sumption which the petitioner seems to make and upon which she predicates much of her argument. Those determinations were unnecessary to a disposition of the case, although we did go so far as to point out that the probate court's jurisdiction and the liabilities upon the representative's bonds continued.

After giving the matter our most careful thought, study and consideration we are convinced a further hearing would not alter our views.

The petition for rehearing is denied.