**B. K. HERNDON, Appellant (Defendant below),**

**Margaret W. Chivers and Jack S. Chivers, (Defendants below),**

v.

**Edwin Collins HEGE and Jeremiah Collins Hege, Appellees (Plaintiffs below).**

**No. 4364.**

Supreme Court of Wyoming.

Nov. 27, 1974.

B. J. Baker of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellant.

Gerald R. Mason and Robert W. Sievers, Pinedale, for appellees.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE, and McCLINTOCK, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

This was a quiet title action to determine the ownerhsip of three parcels of land, the record title of which was in the name of Jeremiah Collins, the grandfather of the parties Hege and Margaret Chivers. The Heges as plaintiffs alleged that they owned an undivided one-fourth interest each and that defendant Chivers owned a one-half interest. Prior to the commencement of the action she conveyed her interest to Herndon and she and her husband Jack S. Chivers disclaimed any right, title or interest in the property. The defendant Herndon denied the plaintiffs' allegations and counterclaimed that the land in question was legally and equitably the sole property of the Collins Land Company and that by virtue of a deed from the Company to him he was the sole owner of the lands, although Jeremiah Collins held the naked legal title thereto. The trial court held the two plaintiffs to be the owners of a one-fourth interest each and the defendant Herndon the owner of a one-half interest, from which judgment he appealed.

The appellant Herndon contended that the issues below were whether the grandfather Jeremiah Collins, the record owner of the lands, held title as trustee for the Collins Land Company or for his own benefit, and if a resulting trust was established whether or not the statute of limitations barred the action. The trial court, in requested findings of fact and conclusions of law, held the defendant had failed in his burden to show that a constructive or resulting trust was established and further that any interest of the Collins Land Company or its successor in interest to the subject land was barred by the statute of limitations and the doctrine of laches. Since we affirm the trial court's holding on the limitation of actions issue, we do not reach the question of whether or not a trust was proved.

The land in question consisted of three parcels totaling 160 acres, 120 acres of which was patented by one individual and

40 acres by another. In 1903 and 1904 the patentees conveyed the lands to the United States under the Forest Reserve Lieu Lands Act of June 4, 1897. This gave the patentees the right to select other lands on the public domain in lieu of the patented lands reconveyed to the United States, such right being generally referred to as "scrip." The "scrip" right was usually transferred through or by means of a power of attorney. Powers of attorney relating to the three parcels of land were executed by the patentees in 1903 and 1904 and they were recorded in the office of the county clerk, Sublette County, Wyoming, in 1928, with Jeremiah Collins as grantee. The lieu lands were not selected under the "scrip" rights and in 1928 the United States relinquished and quitclaimed the originally patented lands to Jeremiah Collins, which relinquishments were recorded in Sublette County in September of 1970. In June, 1970, Margaret Chivers and Jack Chivers, her husband, quitclaimed their interest to B. K. Herndon, as did the Collins Land Company. In 1972 the Heges instituted determination of heirship proceedings and judgment was entered in which it was determined that each of the Heges had a one-fourth interest and Margaret Chivers had a one-half interest. In the case before us it was stipulated that the Heges were the mesne testimentary heirs of one-half of Jeremiah Collins' residual estate and that Margaret Chivers was the mesne testimentary heir of the other one-half.

The Collins Land Company, from which Herndon claimed to have sole ownership of the lands, was a Montana corporation organized in 1899, maintaining offices in Washington, D.C. and Helena, Montana. Jeremiah Collins was president of the Company until his death in 1934; whereupon his son, Ted Collins, became president and so served until his death in 1956, at which time his widow became president and continued until her death in 1968, at which time Margaret Chivers became president. The son and the corporation, commencing in 1928, had actual knowledge that the relinquishments and quitclaims to the lands were in the name of Jeremiah Collins as grantee. Upon Ted Collins' death in 1956 the relinquishments were found in his desk in his office in the Collins Land Company and the then officials of the corporation became aware of the relinquishments if they had not known of their existence prior to that time. The corporation never did assert any claim to the lands, and it was only upon the institution of a quiet title action that Herndon, as assignee of the corporation, asserted that the corporation had owned the lands prior to May, 1970. A period of 44 years elapsed during which no claim was made that a trust relationship existed. During that 44-year period the alleged beneficiary corporation had knowledge that the alleged title to the lands was in the name of an individual with no designation that he was a trustee. It knew that the alleged trustee died in 1934 but asserted no claim. Here we think that where the claimant's predecessor knew of the alleged resulting trust 44 years ago; knew of the death of the alleged trustee 38 years ago and asserted no claim, it must be said that Herndon's stand that his claim was not barred by the limitation period fails to stir equitable and fairness responses in its support.

The will of Jeremiah Collins contained the following provisions:

"5. I give and devise to The Collins Land Company, mentioned in the preceding paragraph, all my right, title and interest in and to any property, real or personal, the title to which may stand of record in my name, but which rightfully belongs to the said The Collins Land Co."

"15. All the remainder of my property, real, personal or mixed, and wherever situated, of which I may die possessed, I give and bequeath to·my daughter [Lena Collins Hege—mother of plaintiffs Hege] and my son [Ted E. Collins—father of Margaret Chivers, assignor of defendant Herndon], share and share alike."

His will was admitted to probate in Washington, D.C. in 1934, with his daughter, Lena Collins Hege, and his son, Ted E. Collins, as executors. No mention of the lands in question was made in his probate nor in the mesne probates by which the Heges and Chivers acquired their interests. Ted Collins, the then president and principal stockholder of Collins Land Company and one of the executors of Jeremiah Collins' will, was in the best conceivable position to exercise any claim which the corporation had to an interest in the land. The Heges claim that the land passed under the residuary clause of the will and Herndon contends that the lands passed under paragraph 5. Because of our holding that the statute of limitation precluded Herndon from establishing a trust, paragraph 5 of Jeremiah's will is not here operative.

Herndon argued that our statutes of limitation, §§ 1–11 through 1–21, W.S.1957, do not apply to a resulting trust because § 1–11 provides that the limitations period shall not apply in the case of a continuing and subsisting trust, and that a resulting trust is a continuing and subsisting trust. He acknowledged that we have in the past held otherwise but asks that we re-examine the rule as to limitations of actions on resulting trusts as set out in the cases of Cook v. Elmore, 25 Wyo. 393, 171 P. 261, and Augustine v. Gibson, Wyo., 429 P.2d 314. He argued that when these cases were decided no consideration was given to § 1–11, which is the applicability provision. While those cases do not specifically mention § 1–11, there is an inescapable conclusion that the court was aware of and considered the applicability section (§ 1–11) in discussing the particular limitations periods. In Augustine v. Gibson, Wyo., 429 P.2d 314, 316, we reiterated the rule in Cook concerning the commencement of the running of the limitations period. In that case there was also a question of which limitations period was pertinent, but the holding there is applicable here in that it makes little difference because the claim was barred under any provisions of the statute of limitations (the longest period under any of our statutes of limitations is 10 years). It is also noted that there was a further factual similarity in that none of the parties were in actual possession.[1]

Herndon observed that our holding in Cook that the statute commences to run from the time the act occurs which created the trust is contrary to some authorities. However, we see no reason, at least in this case, to alter that rule. We think the rule is not as harsh as the appellant contended when the obvious exceptions are considered. If the cestui que trust is in possession, or if the trustee continued to acknowledge in some fashion the trust, or perhaps even if the cestui had no knowledge that the trustee had taken title in his individual name, there would be some grounds for contending that the statute was tolled while those conditions existed. Here the cestui was not in possession and there was no acknowledgement of the trust by the trustee, except that the evidence could have been interpreted to indicate acknowledgement of a trust at the outset but the trial court as the trier of fact found otherwise when it determined that no trust had been proved. It [Collins Land Company] not only had knowledge of the alleged trust relationship, it actually participated in the events which created record title in Jeremiah Collins and therefore was in a position to protect its interest as alleged, and failing to do so its successor should not now be heard to complain; this despite defendant Herndon's contention that the Collins Land Company furnished the consideration for the purchase of the land.

The annotation in 45 A.L.R.2d 382, deals with the subject of when statutes of limitations start to run against enforcement of a resulting trust. It states that California cases have taken the position that the statute will begin to run at the death of the

---

1. Prior to 1970 the lands were not on the tax rolls apparently because it appeared that the title was in the United States. Taxes for 1973, and perhaps for other years subsequent to 1970, were paid presumably by one of the parties.

trustee, as was held by the trial court here. We need not and do not determine that question because of our holding that under the facts of this case the limitations period began to run upon creation of the alleged trust and make reference to the question only because the issue was raised by the defendant and to acknowledge awareness of the rule.

Herndon also argued extensively that the relinquishments by the United States to Jeremiah Collins conveyed nothing and that he took whatever interest was acquired by virtue of the powers of attorney from the original patentees, but we think it makes little difference from which source title was acquired because all parties claim title through Jeremiah Collins and admit that record title was in him. The powers of attorney, dated in 1903 and 1904, were recorded in 1928 and the letters of relinquishments were dated 1928, at which time the Collins Land Company had knowledge of their existence. Therefore, regardless of the source of title the alleged resulting trust would have been established at the latest in 1928.

Herndon contended that the Collins Land Company, his predecessor in interest, furnished the consideration for the purchase of the lands and that title was carried in Jeremiah Collins' name only as a matter of Company practice. Here, where the alleged cestui caused title to be conveyed to an individual by a document appearing to be absolute on its face, thereby creating a patent hostility, the cestui had an obligation to assert its interest or at least make its interest known, and failure to do so for 44 years raised a bar to anyone claiming through it.

As Justice Harnsberger opined in Wilson v. Martinez, 76 Wyo. 196, 301 P.2d 785, 803, 307 P.2d 605:

"There must be an end to litigation and disputes and it is just as important that there come a time when unasserted rights must be held to be forever lost. The more complex and involved our civilization and ways of life become, the more necessary it is that the business and affairs of people be allowed to proceed without a sword of Damocles hanging interminably over their heads in the form of possible unannounced claims, long delayed in their assertion and which, if timely prosecuted, might have been defeated upon merit."

The judgment of the trial court is affirmed.